Lamb *et al. v.* Lamb *et al.*

---

No. 12,142.

## LAMB ET AL. *v.* LAMB ET AL.

WILL.—*Contest of.—Trial by Jury.*—The provisions of section 409, R. S.
1881, providing for trial by the court of causes which were of exclusive
equitable jurisdiction prior to June 18th, 1852, do not apply to a pro-
ceeding to contest a will, which is of statutory creation, and in such pro-
ceeding there is a right to a trial by jury.

SAME.—*Mental Capacity of Testator.—Witnesses.*—Sections 498 and 499, R. S.
1881, do not prohibit the parties, in a proceeding by heirs to set aside a

Lamb *et al. v.* Lamb *et al.* ·

will, from testifying as to facts relating to the mental capacity of the testator, although his executor be a party to the action.

SAME.—*Erroneous Statement in Will as to Advancements.—Evidence.*—For the purpose of showing the mental condition of the testator, evidence that the statements in the will that he had advanced the sums designated to the parties named are erroneous, is admissible.

SAME.—*Rational Disposition of Property.—Presumption.*—If a testator has made a rational disposition of his property, no presumption of unsoundness of mind can be drawn from the fact that the distribution is unequal.

SAME.—*Unequal or Unnatural Disposition of Property.*—Inequality or injustice in the disposition of his estate, is a circumstance which may be considered, with other circumstances, on the subject of the testator's mental capacity.

SAME.—*Prior Declaration of Intention.*—Where, prior to making his will and while in good health, the testator declared his intention to dispose of his property substantially as disposed of in the will, such fact tends to support the will.

SAME.—*Loss of Memory.—Testamentary Capacity.*—The loss of memory destroys testamentary capacity.

SAME.—*General Verdict.—Sufficient when Covers Issues.*—Where a general verdict covers all the issues and supplies a foundation for such a judgment as the law prescribes, nothing more than a general verdict is required.

From the Pike Circuit Court.

*E. A. Ely* and *W. F. Townsend,* for appellants.

*J. W. Wilson, F. B. Posey, E. P. Richardson, J. E. McCullough* and *J. H. Miller,* for appellees.

ELLIOTT, J.—The appellees instituted this action to set aside the will of Stanton Lamb, deceased.

The appellants asked the court to try the case and deny the appellees a right to a trial by jury, and this request was refused. In this there was no error. The issue in such an action as this was not one of exclusively equitable jurisdiction prior to June 18th, 1852, and, therefore, it is not within the provisions of section 409, R. S. 1881. The proceeding to contest a will in a court of law under our system is purely one of statutory creation, and the provisions of section 409, of the code of 1881, do not apply to such proceedings. *Trittipo* v. *Morgan,* 99 Ind. 269. In order to bring a case within the

provisions of that section of the code, it must appear that the proceeding was such as was exclusively one of chancery jurisdiction, and a proceeding can not be of chancery jurisdiction which is the creature of a positive statute and was unknown to the old courts of chancery. The statute of 1843 gave a right to a jury trial in express terms, and this repels the implication that an action to contest a will was of exclusive equitable jurisdiction. The right to a trial by jury is treated as not open to question by the authors who have written upon the question. 1 Redfield Wills, 49, 50; Sackett Instructions to Juries, 432.

Several of the appellees were permitted to testify as witnesses upon the question of the mental soundness of the testator, and in the course of their examination gave testimony —as, of course, they could not avoid doing if they testified upon that subject at all—as to matters that occurred prior to the death of the testator. It is argued with much force and no little plausibility, that the appellees were not competent witnesses under section 499, R. S. 1881. We have given the question much consideration and our conclusion is, that the statute referred to does not prohibit parties from testifying in such a case as this and upon such a subject as the mental capacity of the testator. The question of the soundness or unsoundness of mind is fully open to investigation by both parties, and it is not a question upon which one party can speak of matters of which only he and the dead had knowledge. The question in such a case is essentially unlike a question that arises in cases where the issue is as to the execution of a contract, a deed, or the like, for, in such cases, the matter can not be generally known, and if the party should say what was not true, it would be impossible to contradict him; while, in such a case as this, the mental capacity of the testator may be proved or disproved by witnesses who knew him, whether parties or not, so that the subject is fully open to investigation. The purpose of the statute was to prevent undue advantage as against those whose interests

would be unjustly prejudiced by permitting parties to testify as to matters which they assume were known only to them and the deceased, or as to matters which, from their nature, could only have been known to them and the dead. It was not intended to exclude parties from testifying in cases where the subject is one of which the knowledge that the parties profess to have is not hidden from all other living persons. There is nothing in the spirit of the statute, and certainly nothing in the letter, which excludes parties from testifying respecting matters open to the observation of all the friends and acquaintances of the deceased. Such a matter is the mental capacity of the testator, whose will is contested.

While we agree with appellees' counsel in the view that parties are competent witnesses upon the subject of the mental capacity of a testator, we do not concur in the narrow construction which they give the statute, for we think there are cases where the question turns upon matters connected with the execution of a will, in which parties would be incompetent witnesses. *Wiseman* v. *Wiseman,* 73 Ind. 112 (38 Am. R. 115), and cases cited; *Cupp* v. *Ayers,* 89 Ind. 60; *Cottrell* v. *Cottrell,* 81 Ind. 87.

It is argued that as the executor was a party to the action, the parties were incompetent witnesses under section 498, R. S. 1881. We think that statute does not apply to such a case as this, but that it applies to cases where a claim is asserted against a decedent's estate, or where a claim asserted by the representative of the decedent is resisted. We do not regard that statute as prohibiting heirs from testifying in a suit to set aside a will, as to the mental capacity of the testator, although his executor is a party to the action.

There was no error in permitting the appellees to prove that the statements in the will, that the testator had advanced the sums designated to the parties named, were erroneous. This evidence was competent for the purpose of showing the mental condition of the testator, and not for the purpose of contradicting the will. We agree with appellants' counsel

that parol evidence can not be given to contradict or vary the statements of a will, and fully approve the rule declared in the cases of *Judy* v. *Gilbert*, 77 Ind. 96 (40 Am. R. 289), *Bunnell* v. *Bunnell*, 73 Ind. 163, and *Grimes* v. *Harmon*, 35 Ind. 198 (9 Am. R. 690).

In declaring the evidence offered in this case competent, we do not trench upon that rule, for we simply decide that the evidence is competent for the purpose of showing the mental condition of the testator. If a testator should declare in his will that he had given certain of his children or kinsmen large sums of money, and it should turn out that he had given them 'nothing, it would be some evidence that he was laboring under a delusion, or that his mind was shattered. If a man should state in his will that a child born to him in lawful wedlock was not his child, we suppose no one would doubt that it would be competent to show that he was laboring under a delusion. Or, to take as another illustration, the recital that is found in almost nine wills out of ten, that the testator "is of sound mind and disposing memory," certainly no one will contend that such a recital may not be contradicted. If such recitals may not be disproved, then all that need be done in any case is to embody them in a will and thus shut out all inquiry. Evidence that the testator did not correctly comprehend the true condition of his affairs and rightly appreciate the situation of those who were the objects of his bounty, is always competent, but its weight is, of course, for the jury. If a father, because of mental incapacity, should be deluded into the belief that he had given his son $10,000, when in truth he had not given him a farthing, that fact would be some evidence, at least, of a lack of testamentary capacity.

The court gave the jury the following instruction:

"A person competent to make a will may disinherit all of his children, and bestow all of his property upon strangers, or he may give his property to one or more of his children and disinherit the others, or he may bequeath more of his

property to some than to others of his children, and the motive for so doing can not be questioned, and the hardship of the case can have no other weight further than a circumstance, tending with other testimony to show the insanity of the testator.

" It is a question of fact for the jury, from the evidence in this case, whether Stanton Lamb made an unequal or unnatural disposition of his estate; if he did so, the weight to be given to that fact must be determined from a consideration of the circumstances in the case.

" In determining the true character of the will in question, in reference to the parties to this suit, it will be proper for you to consider the pecuniary circumstances of the respective parties at the time the will was made.

" If, upon full consideration of all the circumstances connected with the making of this will, you find that the testator has made a rational and reasonable disposition of his property, no presumption of unsoundness of mind can be drawn from the fact that he bestowed a larger share of his property upon the defendants than upon the plaintiffs.

" It is proper for the jury to consider, with this part of the case, any declaration which may have been made by the testator prior to the making of the will, in regard to the disposition he intended to make of his property.

"And if it should be found that when he was in good health, in writing or otherwise, he declared his intention to dispose of his property substantially in the same manner it is disposed of in the will in suit, it is an important fact to be considered in determining the validity of this will and as tending to its support."

This instruction asserts the law correctly, and is in strict conformity to the rule declared in *Bundy* v. *McKnight*, 48 Ind. 502, see p. 509. There is no justice in counsel's criticism, that the instruction told the jury that " it is a hardship for the testator to give all his property to part of his children and disinherit the others." The plain reason for this con-

clusion is that the criticism rests upon a mistake. The instruction did not, as counsel erroneously assume, tell the jury that it was a hardship for the testator to give all of his property to a part of his children and disinherit the others, but, on the contrary, properly submitted the whole matter to the jury.

It is the law that an unnatural, or, as the old books put it, an undutiful disposition of property, is a circumstance tending to prove a lack of testamentary capacity. Such a disposition of property does constitute a circumstance, to be considered with other circumstances, upon the subject of the testator's mental capacity. It is possible that if the parts of the instruction referred to by counsel were detached from the words with which they are associated, they might be deemed to have worked the appellants harm, but they can not be detached, since it is the rule of reason, as well as of law, that instructions must be taken as an entirety.

The fourth instruction asked by the appellants was embraced within that given by the court, and there was, therefore, no available error in refusing it.

The second instruction asked by appellant reads thus: " Failure of memory is to be considered in connection with other circumstances tending to show mental derangement, but failure of memory is not sufficient incapacity, unless it goes to the extent of such a loss of memory as to deprive the testator of the ability to call up to the mind the immediate members of his family and property. Memory is generally impaired by age and also by disease, while the mind may remain entirely rational; and if Stanton Lamb's mind was rational at the time of making the will, the mere loss of memory will not be sufficient to set it aside." There are, at least, two faults in this instruction: *First.* It assumes facts which ought to be left to the jury. *Second.* It affirms that loss of memory does not destroy testamentary capacity. The latter fault is a very grave one, and of itself condemns the instruction. A man without a memory can not make a will.

A general verdict is sufficient where the issue submitted to the jury is, whether a testator, whose will is assailed, was or was not of unsound mind, and this was the issue submitted to the jury in this instance, for the court instructed the jury that there was no evidence upon the question of undue influence. We regard it as quite clear that a general verdict is sufficient on a single issue, such as the one here submitted to the jury for decision. It would, indeed, have made no difference if both questions, that of testamentary capacity and of undue influence, had gone to the jury, as a general verdict would have covered both, and furnished ample foundation for a judgment. Where a general verdict covers all the issues and supplies a foundation for such a judgment as the law prescribes, nothing more than a general verdict is required.

The evidence yields the verdict satisfactory support.

Judgment affirmed.

