Burkhart *et al. v.* Gladish *et al.*

Filed April 22, 1890.

No. 14,631.

BURKHART ET AL. *v.* GLADISH ET AL.

PLEADING.—*Complaint.—Sufficiency of.—Questioned by Assignment of Error.— When will be Upheld.*—Where the sufficiency of a complaint is questioned for the first time in the Supreme Court, if the complaint would be good after verdict, or is sufficient to bar another action for the same cause, it is sufficient to withstand such an attack.

WILL.—*Mental Capacity of Testator.— What Sufficient in Law.*—The law requires one who would execute a valid will to possess mind enough to know the extent and value of his property, the number and names of the persons who are the natural objects of his bounty, their deserts with reference to their conduct and treatment towards him, their capacity and necessity, and that he shall have sufficient active memory to retain all these facts in his mind long enough to have his will prepared and executed.

SAME.—*Term "of Unsound Mind."— What Included Under.*—The term " of unsound mind," under section 2556, R. S. 1881, includes every species of unsoundness of mind.

SAME.—*Delusions.—Impairment of Mind.*—A person possessed of delusions, whose mind is impaired to that degree which the law upon the subject

VOL. 123.—22

of wills recognizes as amounting to insanity or unsoundness of mind, is incapable of making a valid will.

SAME.—*Contest of.—Complaint.—Sufficiency of when Tested by Assignment of Error.*—A complaint in an action contesting a will which charges that the testator's mind was so far affected that he no longer possessed a sound and disposing mind and memory, is sufficient when tested for the first time in the Supreme Court by an assignment of error.

SAME.—*Defective Complaint.—Cured by Verdict.*—Under such an allegation as above, proof was admissible showing the extent to which the testator's mind was impaired, and the defective allegations in the complaint would be cured by the verdict of the jury.

SAME.—*Evidence.—Sufficiency of to Show Mental Unsoundness.*—Where the evidence in an action to set aside a will tends to prove that the testator was addicted to the excessive use of intoxicating drink; that he was insanely jealous of his wife, a woman of good reputation for chastity; that he persistently denied the paternity of two of his children, and charged that one of them was the child of his son-in-law; that he charged his wife with being too intimate with all of his sons-in-law, as well as with other men, and frequently beat and abused her on account of her supposed infidelity; that finally he shot her to death and then committed suicide, leaving a written statement proving that he took her life on account of her supposed infidelity, there being no foundation for his charges against her, the testator's unsoundness of mind at the time of his death is sufficiently shown.

SAME.—*Testimony of Non-Expert Witness.—Basis of Opinion.—Evidence as to.*—A person who is not an expert can not testify as to the mental condition of another without giving the facts upon which the opinion to be stated rests.

SAME.—*Conduct and Conversations of Testator in Family.—Testimony as to.—Parties.*—In giving the facts upon which the witness bases his opinion, he should be permitted to state every fact which could be reasonably made the foundation of an opinion as to the mental condition of the testator. Under this rule the parties to the suit were properly permitted to testify to the conduct and conversations of the testator in his family.

SAME.—*Work Done by Plaintiffs for Testator.—Evidence.*—It was not error for the court to permit the parties and other witnesses to testify as to the kind and quality of work and labor performed by the plaintiffs for the testator during the time they lived at home, and their conduct towards him, such evidence going to show whether the will was natural or unnatural, and whether the parties disinherited had so conducted themselves towards the testator as to merit disinheritance.

SAME.—*Witness.—Intimacy of with Wife of Testator.*—The testimony of a witness with whom the testator had frequently charged his wife with improper intimacy, that he had never had sexual intercourse with the

wife of the testator, was admissible as tending to prove the allegation of the complaint that the testator in making such charges was influenced by insane delusions.

VERDICT.—*Supported by Evidence.—Answers to Interrogatories.—New Trial.*—Where there is no conflict between the answers to interrogatories and the general verdict, and the general verdict is supported by the evidence, a new trial should not be granted because the answers to interrogatories are not supported by the evidence.

From the Pike Circuit Court.

*J. E. McCullough, J. H. Miller, E. P. Richardson* and *A. H. Taylor,* for appellants.

*E. Smith, F. B. Posey* and *W. F. Townsend,* for appellees.

COFFEY, J.—This was an action by the appellees against the appellants to contest and set aside the last will of Peter Burkhart. The complaint, omitting the caption and formal parts, is substantially as follows :

" That Peter Burkhart departed this life on the 20th day of July, 1887, leaving the plaintiffs and defendants herein, except Noah Burkhart, as his only children and heirs at law; that, on the 22d day of July, 1887, a certain writing, purporting to be his last will and testament, bearing date March 14th, 1885, was presented to, and admitted to probate by, the clerk of the Pike Circuit Court, and was filed and recorded in the record of wills in said county, and letters were thereupon issued to the defendants Noah Burkhart and Noah A. Burkhart as executors of said pretended will, who thereupon qualified and took charge of all the property, both real and personal, named in said pretended will, which estate is of the probable value of twelve thousand dollars ; a copy of said pretended will is filed with the complaint ; that by the terms of said pretended will the defendants Noah A. Burkhart, Adam G. Burkhart, General Burkhart and Caroline Morgan are named as devisees and legatees therein, and are given thereby the whole of the property of the said Peter Burkhart except thirty-six and sixty hundredths acres of land, which are by the terms of the said pretended will set apart to discharge the

debts which the said Peter Burkhart owed at the time of his death, with the provision that whatever might be left after the payment of said debts should be divided equally among the plaintiffs and defendants herein, except the said Noah Burkhart; that the personal estate of the said Peter Burkhart, together with said land, will not be more than sufficient to pay said debts; that the provisions of said pretended will entirely exclude the plaintiffs, who are entitled as the heirs of said Peter Burkhart to a five-ninths part in value of said estate; that said pretended will is invalid for the following reasons : The said Peter Burkhart, at the time of the execution of said pretended will, and for many years prior thereto, and down to the day of his death, was not the possessor of a sound mind and disposing memory, but, on the contrary, was in a state of partial insanity, produced by the long continued and excessive use of alcoholic stimulants, and was afflicted with and subject to insane delusions concerning his wife and these plaintiffs, and the husbands of said Selina J., Harriet A. and Susan ; that for many years prior to the execution of said pretended will he was continually under the influence of said insane delusion, and was furiously jealous of his wife, a woman of spotless reputation for chastity, and constantly charged her with licentious intentions and conduct towards every male person with whom she chanced to have any conversation ; that, influenced by said insane delusion, he openly charged his said wife with having criminal intercourse with the husbands of his and her own daughters, and with having born children by them; that for fifteen years next before the execution of said pretended will he made his wife and said children the victims of his insane jealous rage, and would at divers times within said period have murdered his said wife on account of said insane delusion, but he was prevented from so doing by the timely interference of other parties."

E. P. Richardson was appointed guardian *ad litem* for

General Burkhart, who was shown to be a minor, and filed an answer as such, denying the allegations in the complaint.

The other appellants, being adults, also filed their general denial to the complaint, and the cause was at issue.

The cause was tried by a jury, who returned a general verdict for the appellees, and with said general verdict they also returned answers to special interrogatories.

The appellants filed a motion and reasons for a new trial, which motion was overruled, and excepted to ; the court also overruled a motion in arrest of judgment, and then rendered a decree setting aside the will mentioned in the complaint, and revoking the probate thereof.

The errors assigned are :

1st. That the court erred in overruling the motion for a new trial.

2d. That the court erred in overruling the motion in arrest of judgment.

3d. That the complaint does not state facts sufficient to constitute a cause of action.

The sufficiency of the complaint is questioned for the first time in this court, and when so questioned it is settled that if the complaint would be good after verdict, or is sufficient to bar another action for the same cause, it is sufficient to withstand such an attack. *Laverty* v. *State, ex rel.,* 109 Ind. 217 ; *Harper* v. *Powell,* 10 Ind. 32.

The contention of the appellants is that as it is not alleged that the partial insanity and the delusions set out in the complaint in any way influenced the mind of the testator in the execution of the will in controversy, it does not show any legal reason for setting aside such will. It is contended that a person who is only partially insane may execute a valid will, but no authority in support of this position is cited by counsel.

The question, therefore, is presented as to whether partial insanity is, within the meaning of our statute (section 2556, R. S. 1881), unsoundness of mind.

*Delusions* and *insanity* are sometimes used as meaning the same thing. Ewell's Leading Cases, 660. *Delusions* and *insanity* are but terms which we use to indicate a diseased mind. The term " of unsound mind," as used in our statute, includes every species of unsoundness of mind. *Willett* v. *Porter*, 42 Ind. 250 ; *Eggers* v. *Eggers*, 57 Ind. 461.

In the case last cited it was held that a person who had become the victim of mental derangement, amounting to insanity in any form, is, under our statute, incompetent to make a will, and that an instruction to the effect that though the testator might have been insane to some extent, yet such insanity would not avoid the will unless it could be shown to have entered into or affected the will itself, was erroneous.

The rule as here stated, we think, needs some modification, and is, in fact, modified by the other cases upon the same subject decided by this court. It is undoubtedly true that a person of unsound mind is incapable of executing a will, but the question always arises in cases of this kind as to what the degree of mental infirmity is which the law recognizes as insanity, or such unsoundness of mind as incapacitates a person from making a will. While the law does not undertake to measure a person's intellect, and to define the exact quality of mind and memory which he shall possess to authorize him to make a will, yet it does require him to possess mind to know the extent and value of his property, the number and names of the persons who are the natural objects of his bounty, their deserts with reference to their conduct and treatment towards him, their capacity and necessity, and that he shall have sufficient active memory to retain all these facts in his mind long enough to have his will prepared and executed. If he is in the possession of mental faculties to this extent he is not of unsound mind or insane within the meaning of the law. On the other hand, if he has not the degree of mental power above indicated, he is of unsound mind. *Lowder* v. *Lowder*, 58 Ind. 538. And when unsound-

ness of mind is once shown to exist, generally it is presumed to continue until the contrary is shown.

The complaint before us alleges that at the time of the execution of the will in controversy, and for many years prior thereto and down to the date of his death, the testator was not possessed of a sound and disposing mind and memory, but on the contrary was in a state of partial insanity.

In the case of *Durham* v. *Smith,* 120 Ind. 463, it was held that an instruction which told the jury, in effect, that a person of unsound mind was incapable of making a will, and if there was any unsoundness of mind the testator could not make a valid will whether such unsoundness did or did not affect the character of the testament, was erroneous as tending to mislead the jury, unless qualified by an instruction defining what degree of mental disease or impairment constituted unsoundness of mind within the meaning of the law. It was conceded in that case, however, that such an instruction when accompanied by one defining unsoundness of mind would not be erroneous.

It is not to be denied that a person may be possessed of delusions and yet be capable of making a valid will, but not so if his mind be impaired to that degree which the law upon the subject of wills recognizes as amounting to insanity or unsoundness of mind. *Lowder* v. *Lowder, supra.* In this case the complaint, as we understand it, undertakes to charge that the testator's mind was so far affected that he no longer possessed a sound and disposing mind and memory. As to whether this would be sufficient to withstand a demurrer we need not decide; but when tested for the first time in this court by an assignment of error we think it sufficient. Under such an allegation proof was admissible showing the extent to which the testator's mind was impaired, and the defective allegations in the complaint would be cured by the verdict of the jury.

There are ninety-four reasons assigned for a new trial, but it is wholly unnecessary that each reason should be consid-

ered and discussed separately in this opinion. The first reason assigned for a new trial, and urged in this court by the appellants, is that the verdict of the jury is not supported by the evidence. We have carefully read and considered the evidence and find much in it which tends to prove, we think, that the testator was a person of unsound mind. The evidence tends to prove that he was a man addicted to the excessive use of intoxicating drink. He was insanely jealous of his wife, who was a woman of good reputation for chastity. He constantly and persistently denied the paternity of two of his children, and boldly charged that one of them was the child of his son-in-law. He charged his wife with being too intimate with all of his sons-in-law, as well as with other men, and frequently beat and abused her in a most inhuman manner on account of such supposed infidelity. Finally, in July, 1887, he shot her to death and then committed suicide, leaving a written statement proving beyond question that he took her life on account of her supposed infidelity. At the time of her death she was over sixty years of age, and the evidence tends to prove that she was an excellent woman and that there was no foundation whatever for his charges against her. Under the evidence, as it comes to us, we think there is not much room to doubt that Peter Burkhart, the testator, was at the time of his death a person of unsound mind, and that such had been his condition for many years prior thereto.

Many of the reasons assigned for a new trial relate to the contention of the appellants that certain answers to interrogatories propounded to the jury are not supported by the evidence.

The answers to the special interrogatories propounded to the jury are not in conflict with, but support the general verdict. If there were a conflict between the answers to interrogatories and the general verdict it would have been the duty of the court to grant a new trial, if such answers were

not supported by the evidence, as the ends of justice could have been reached in no other way, but as there is no conflict and the general verdict is supported by the evidence, a new trial should not be granted because the answers to interrogatories are not supported by the evidence. *Staser* v. *Hogan*, 120 Ind. 207.

The question of the competency of the appellees as witnesses in the cause is presented in various ways, and it is earnestly contended by the appellants that the rule announced in the case of *Lamb* v. *Lamb*, 105 Ind. 456, was not adhered to in this case. In the case of *Lamb* v. *Lamb*, *supra*, it was held by this court that parties to a suit to contest the validity of a will on the ground of insanity of the testator, were competent witnesses to testify to such insanity. In speaking of the question under consideration the court said : " The statute referred to does not prohibit parties from testifying * * upon such a subject as the mental capacity of the testator. * * There is nothing in the spirit of the statute, and certainly nothing in the letter, which excludes parties from testifying respecting matters open to all the friends and acquaintances of the deceased. Such a matter is the mental capacity of the testator whose will is contested."

It is well settled that a person who is not an expert can not testify as to the mental condition of another without giving the facts upon which the opinion to be stated rests. *Staser* v. *Hogan, supra ; Carthage T. P. Co.* v. *Andrews*, 102 Ind. 138; *Mills* v. *Winter*, 94 Ind. 329 ; *Cline* v. *Lindsey*, 110 Ind. 337. Under this rule it may be difficult to fix a limit to the facts about which a party may testify, as it is evident that the weight of the opinion stated must of necessity depend upon the facts upon which it is based. *Cline* v. *Lindsey, supra.*

It would, perhaps, be impossible to fix any exact rule which would be an inflexible guide in all cases, but in giving the facts upon which the witness bases his opinion, it can not be doubted that he should be permitted to state every fact which

could be reasonably made the foundation of an opinion as to the mental condition of the testator. If not permitted to state all the facts, it is evident that the rule which permits parties to testify as to the mental condition of the testator would be of little value, as the court or jury would be without the means of weighing such opinions.

Under such a rule the court did not err in permitting the parties to this suit to testify to the conduct and conversations of the testator in his family. Such testimony does not fall within the limitation suggested by the court in *Lamb* v. *Lamb, supra,* relating to the execution of a will. The daily conduct and conversation of the testator are supposed to be open equally to all the members of the family—the appellants as well as the appellees.

We do not think the court erred in permitting the parties and other witnesses to testify as to the kind and quality of work and labor performed by the appellees for the testator during the time they lived at home, and their conduct towards him.

The will in controversy, as we have seen, was contested on the ground of mental incapacity. It was an important question, therefore, as to whether the will was natural or unnatural, and to know whether the parties who had been disinherited had so conducted themselves towards the testator as to merit such treatment. Such evidence, we think, as well as the will itself, tended to throw light upon the subject of his mental condition. *Lamb* v. *Lamb, supra.*

The court did not err in permitting Elijah Gladish to testify that he never had sexual intercourse with the wife of the testator. The evidence proves that the testator frequently charged his wife with improper intimacy with this witness. The allegation in the complaint is that the testator, in making such charges, was influenced by insane delusions. As tending to prove this allegation it was proper to show that the charge against his wife had no foundation in fact.

Finally, it is urged that the court erred in overruling the

motion of the appellants to suppress certain questions and the answers thereto found in the deposition of Mrs. Gladish. The objections go to the form of the questions. Without inquiring as to whether the questions are in the most approved form, it is sufficient to say that the objections are of a technical character, and that in our opinion the appellants were not injured by the ruling of the court thereon.

There is no error in the record for which the judgment of the circuit court should be reversed.

Judgment affirmed.

