## KEYS ET AL. v. McDOWELL ET AL.

[No. 7,900. Filed January 8, 1913. Rehearing denied May 6, 1913. Transfer denied October 16, 1913.]

1. APPEAL.—*Review.*—*Evidence.*—*Weight and Sufficiency.*—In determining whether the evidence is sufficient to sustain the finding of the trial court, the court on appeal cannot weigh the evidence, but will look only to that which is most favorable to such finding, and if there is some evidence to sustain it, the judgment will stand regardless of the amount of evidence to the contrary. p. 268.

2. APPEAL.—*Review.*—*Theory Adopted in Trial Court.*—*Presumptions.*—*Evidence.*—Every presumption is in favor of the trial court, and where the theory of a complaint is not clear, and the court on appeal is in doubt as to the theory adopted by the trial court, the judgment will be sustained if it is supported by evidence on any theory consistent with the pleadings, on the presumption that the trial court adopted that theory which would sustain the judgment rather than one on which it could not properly rest. p. 268.

3. EVIDENCE.—*Presumptions.*—*Undue Influence.*—Where the relation of attorney and client, guardian and ward, principal and agent, pastor and parishioner, husband and wife, or parent and child, exists, there is a presumption of trust and confidence on one side and of a corresponding influence on the other, and where a person occupying a superior position in such a relation has dealt with the other so as to obtain a benefit or advantage, the presumption of undue influence arises. p. 269.

4. TRIAL.—*Issues.*—*Undue Influence.*—*Evidence.*—*Presumptions.*—Where the presumption of undue influence arises by reason of a benefit or advantage obtained by one holding the superior position in a legal or domestic relation of trust and confidence, a *prima facie* case is made in favor of the party having the burden of proof upon that issue, and, in the absence of evidence tending to rebut such presumption, he is entitled to a verdict or finding in his favor thereon. p. 269.

5. EVIDENCE.—*Undue Influence.*—*Moral and Social Relations.*—*Inferences.*—*Presumptons.*—While relations of merely a moral,

social or personal character may be shown to exist between the parties, together with evidence as to their conduct and treatment of each other, to enable the court or jury to determine whether a confidence was reposed by one and a corresponding influence gained by the other, and although it may be sufficient to justify an inference of undue influence, such evidence cannot give rise to a presumption of undue influence.    p. 270.

6. TRIAL.—*Issues.—Undue Influence.—Question of Fact.*—Where the evidence on the issue of undue influence is of such a character that it may or may not justify an inference of undue influence, the court cannot say as a matter of law that a *prima facie* case has been made, the question of whether such inference should be drawn from the evidence is one of fact for the court or jury trying the facts.    p. 270.

7. DEEDS.—*Undue Influence.—Confidential Relations.—Burden of Proof.*—Plaintiff, in an action to set aside the deed of his ancestor on the ground of undue influence exerted by the grantee, has the burden of proving that a relation of trust and confidence existed between the grantor and grantee at the time of the execution of the deed.    p. 271.

8. DEEDS.—*Undue Influence.—Confidential Relations.—Evidence.*—In an action to set aside the deed of plaintiff's ancestor on the ground that its execution had been procured by the undue influence of one of the grantees, evidence that such grantee was a minister and bishop of the religious denomination to which such ancestor belonged, but not showing that he was ever a minister of the congregation of which such ancestor was a member, and showing that they were on friendly terms, that defendant visited plaintiff's ancestor a number of times and treated him with kindness and respect, that defendant participated in the management of property previously conveyed by such ancestor to a missionary society of the church, that a number of letters were exchanged, and that defendant on one or two occasions had given him small presents, was not sufficient to compel an inference of undue influence, and the court on appeal cannot say as a matter of law that the finding that there was no undue influence was not sustained by the evidence.    p. 271.

9. DEEDS.—*Undue Influence.—Evidence.*—In an action to set aside the deed of plaintiff's ancestor, which conveyed certain property in trust for the benefit of a South American theological institute devoted to the training of native ministers, on the ground that the execution of such deed was procured by undue influence, evidence showing that the grantor was an old man, that his only relatives and heirs were a sister of the half-blood, and the direct and remote descendants of a brother and sister of

the half-blood, that he was a devoted member of the Methodist Episcopal Church, and especially interested in its foreign missions, that for many years he had entertained the purpose and intention of giving his property to the church for the benefit of foreign missions, was sufficient to warrant a finding that no undue or improper influence was exercised over the mind of the grantor. p. 272.

10. WITNESSES.—*Competency.*—In an action by heirs to cancel a deed to real estate made by their ancestor on the grounds of undue influence and mental incapacity, none of the parties are competent to testify to any matter which occurred prior to the death of the ancestor, since it is an action to obtain title to property in the right of an ancestor within the meaning of §522 Burns 1908, §499 R. S. 1881. p. 273.

11. WITNESSES.—*Action by Heirs to Cancel Deed.*—*Mental Incapacity.*—*Evidence.*—*Admissibility.*—In an action by heirs to cancel a deed to real estate made by their ancestor on the grounds of undue influence and mental incapacity, where plaintiffs introduced witnesses who testified that such ancestor was of unsound mind at the time the deed was executed, defendants were competent to testify upon that issue and to give an opinion as to whether he was of sound or unsound mind. p. 273.

12. EVIDENCE. — *Mental Capacity.* — *Witnesses.*—*Competency.* — A person who is not an expert cannot give his opinion as to the mental condition of another without testifying to the facts upon which such opinion is based. p. 273.

13. EVIDENCE.—*Mental Capacity.*—*Admissibility.*—*Action by Heirs to Cancel Deed.*—In an action by heirs to cancel a deed of their ancestor on the grounds of undue influence and mental incapacity, testimony of the parties as to what was said and done at the time the deed was executed, as a basis for their opinions upon the question of the soundness of grantor's mind, was proper, and could be considered in determining what weight should be given to such opinions, but for no other purpose. p. 274.

14. APPEAL.—*Review.*—*Evidence.*—*Issues.*—*Presumptions.*—Where evidence was admissible only as to a certain issue, it will be presumed on appeal that the trial court in making its finding considered such evidence only as to that issue. p. 274.

From Kosciusko Circuit Court; *L. H. Wright,* Special Judge.

Action by Clementine Nichols Keys and others against William F. McDowell and others. From a judgment for defendants, the plaintiffs appeal. *Affirmed.*

*Frazer & Frazer, Brown & Dolman, Henley, Matson & Gates* and *John L. Baker,* for appellants.

*Bertram Shane* and *L. W. Royse,* for appellees.

LAIRY, J.—The appellants as heirs of Elijah Hays brought this suit against William McDowell and others as trustees, and the Nicholas Lowe Theological Institute, a corporation, the purpose of which suit was to set aside the conveyance of certain real estate and the transfer of certain personal property made by Elijah Hays in his lifetime to said trustees to be held by them for the benefit of the Nicholas Lowe Theological Institute.

The complaint shows that in the year 1887, Elijah Hays and his wife made a conveyance of most of the property of which he was then possessed to the Missionary Society of the Methodist Episcopal Church, and that said society on the date of said conveyance entered into a contract to pay an annuity of $1,000 to Hays during his life, and an annuity of $500 to his wife during her life with the provision that in case Mrs. Hays survived Mr. Hays her annuity should be increased to $1,000 during the remainder of her life. After this conveyance, as the complaint avers, the missionary society took possession of the property so conveyed and collected the rents and profits and paid the annuities, and that Charles McCabe, representing such society with the assistance of the defendants, Alleman, Guild and Royse, controlled and managed such property and collected the rents and profits and paid the annuities therefrom, as provided in the contract. As shown by the complaint Elijah Hays and his wife both lived until November 4, 1902, at which time the wife died, but he lived until July 26, 1907. During the time which elapsed from the date of the first conveyance to the death of the wife, Elijah Hays accumulated considerable property of which he was possessed at the time of his wife's death. This is the property which was conveyed to the trustees for the benefit of the Nicholas Lowe Theological Institute on December 24, 1902, which deed is attacked by

the first paragraph of complaint. This paragraph alleges that at the time this deed was executed the grantor was a person of unsound mind, and it also avers in substance that at the time the deed in question was executed and for a long time prior thereto the grantor was old and sick, weak and infirm, both in body and mind on account of which he was very susceptible to the influence of others; that the grantor Elijah Hays, was a member of the Methodist Episcopal Church and that one Charles McCabe, a bishop of that church and a man of great force and persuasive ability was his close friend and spiritual adviser, and that by reason of the relation of trust and confidence and spiritual guidance which existed between them, said McCabe had acquired over Hays an influence which he was unable to resist. The complaint then charges that said McCabe, taking undue and improper advantage of said relation of trust and confidence and of the mental weakness of Elijah Hays and of the influence which he had acquired over him as aforesaid and designing and conspiring with the defendants Royse and Alleman and Guild, and with others to plaintiffs unknown, to deprive him of all of said remaining property and rights, the said McCabe fraudulently and wrongfully persuaded, procured and compelled the said Elijah Hays to sign and deliver a deed conveying to Charles McCabe, James N. Fitzgerald, Lemuel W. Royse, William D. Alleman and Daniel H. Guild, all his said property. The second paragraph of complaint is similar to the first except that it seeks to set aside a conveyance between the same parties made by a deed dated on November 20, 1904, conveying the same property described in the deed of December 24, 1902, and in addition thereto including a description of one lot not described in the first deed.

The issues formed on the complaint were tried by the court, resulting in a finding and judgment for the defendants. The only error properly assigned in this court is the action of the trial court in overruling appellants' motion for

a new trial.   Of the several reasons assigned for a new trial only two are urged as grounds for reversal.

The first point presented by appellants is that the evidence is not sufficient to sustain the finding of the court.   In deciding the question thus presented, this court cannot

1.   weigh the evidence, but will look only to the evidence most favorable to the finding.   If there is some evidence tending to support the finding, the judgment must stand, no matter how much evidence there is to the contrary. *Wolcott* v. *Hayes* (1909), 43 Ind. App. 578, 88 N. E. 111; *Cleveland, etc., R. Co.* v. *Gossett* (1909), 172 Ind. 525, 87 N. E. 723.

Counsel do not agree as to the theory of the complaint. Counsel for appellees contend that it proceeds upon the theory that the conveyances in question were void upon the ground that the grantor, at the time they were made, was a person of unsound mind, while counsel for appellants insist that it proceeds upon the theory that the conveyances were voidable on the ground that they were procured by undue influence.   Evidence was introduced by appellants tending to show that the grantor was of unsound mind at the dates of the conveyances, and evidence was also introduced by appellees tending to show that he was of sound mind at those dates.   Upon this question appellants' counsel concede that

2.   the evidence is conflicting.   Every presumption is in favor of the trial court and where the theory of the complaint is not clear, and where this court is in doubt as to the theory adopted by the trial court, the judgment will be sustained if it is supported by evidence tending to sustain it upon any theory consistent with the pleadings and proof, the presumption being that the trial court adopted the theory which will sustain the judgment rather than a theory upon which no such judgment could properly rest.

Upon the question of undue influence, counsel for appellants claim that the evidence shows without dispute that a confidential relation existed between Charles McCabe and

the grantor Elijah Hays at the time the conveyances in ques-
tion were made; and that both of such conveyances were
made to McCabe and the other trustees named, for the bene-
fit of the theological institute, and without valuable consider-
ation. The position taken by the appellants is: (1) that
such a state of facts gives rise to a presumption of undue
influence and that the deeds were procured thereby; (2)
that this presumption prevails and is controlling upon the
court until rebutted by evidence tending to show that the
transaction was in all respects fair and that no improper
influence was used and no advantage gained, and that, unless
so rebutted, the court was required to make a finding in
accordance with such presumption; and (3) that there is no
evidence in the record tending to rebut the presumption so
created. There are certain legal and domestic relations in
which the law raises a presumption of trust and confidence
on one side and a corresponding influence on the
3. other. The relation of attorney and client, guardian
and ward, principal and agent, pastor and parishioner,
husband and wife, parent and child belong to this class and
there may be others. Where such a relation exists between
two persons and the one occupying the superior position has
dealt with the other in such a way as to obtain a benefit or
advantage the presumption of undue influence arises. *Roch-
ester* v. *Levering* (1886), 104 Ind. 562, 4 N. E. 203; *Huff-
man* v. *Huffman* (1905), 35 Ind. App. 643, 73 N. E. 1096;
*McCord* v. *Bright* (1909), 44 Ind. App. 275, 87 N. E. 654.
Upon the issue of undue influence, such a presump-
4. tion, arising in favor of the party having the burden
of proof makes a *prima facie* case; and, if no evidence
is introduced tending to rebut such presumption, he is en-
titled to a verdict or finding in his favor upon that issue. *Mc
Cormick* v. *Malin* (1841), 5 Blackf. 509; *Shirk* v. *Neible*
(1901), 156 Ind. 66, 59 N. E. 281, 83 Am. St. 150; *Farmer* v.
*Farmer* (1884), 39 N. J. Eq. 211; *North* v. *Jones* (1912), 53
Ind. App. 203, 100 N. E. 84. It has also been frequently

said that the same rule applies where the relation existing is not legal but of a moral, social or personal character.  We have no doubt that relations of this kind may be shown as bearing upon the question of undue influence where dealings have taken place between persons sustaining such a relation, and that their conduct and treatment of each other may be considered by the court or jury trying the case in determining whether a confidence was reposed by one and a corresponding influence gained by the other.  From evidence of this kind the court or jury trying the case might or might not infer undue influence. Such evidence might be sufficient to justify an inference of undue influence, but it would not rise to the dignity of a presumption.  *Friedersdorf* v. *Lacy* (1910), 173 Ind. 429, 90 N. E. 766.

When a presumption arises in favor of a party having the burden of proof a *prima facie* case is made out and the court can say as a matter of law that he is entitled to recover in the absence of evidence tending to rebut the presumption; but where the evidence is of such a character that it may or may not justify an inference merely, the court has no right to say as a matter of law that a *prima facie* case has been made.  In such a case it is for the jury or judge trying the questions of fact to consider the evidence and decide whether such inference should be drawn.  So also where reasonable minds might draw opposite inferences from the evidence, the question is always one of fact. In the case of *Friedersdorf* v. *Lacy, supra,* the Supreme Court said: "If all the facts were established, upon the assumed existence of which this instruction is predicated, it is doubtless true that they might justify, and in any event would sustain, a finding by the jury that the execution of the will was procured by undue influence.  The issue of undue influence joined in this case, like other questions, must be determined from all the facts and circumstances given in evidence.  The ultimate inference of undue influence, or

its absence, was one of fact to be drawn by the jury and not to be declared by the court as a matter of law.''

The positions of appellants are met by two propositions on behalf of appellees: (1) that the evidence does not show without dispute that the relation of pastor and parishoner existed between Charles McCabe and Elijah Hays or 'that any such relation of trust and confidence existed as would give rise to a presumption of undue influence; (2) that there is evidence in the record tending to rebut any presumption of undue influence which would arise from any confidential relation which the evidence might establish.

Upon the first proposition it may be stated that the burden rested upon the appellants to prove that a confidential relation existed between Charles McCabe and Elijah Hays. If the evidence relating to this question failed to convince the court that such a relation existed, then there would be no basis upon which a presumption of undue influence could rest. The evidence regarding the relations between McCabe and Mr. Hays is very meagre and unsatisfactory. It does not appear that McCabe was at any time the minister of any congregation of which Mr. Hays was a member, but it does appear that he was connected with the Methodist Episcopal Church in some capacity in connection with its foreign missions, and that afterwards he was a bishop of that church. It also appears that he was on friendly terms with Mr. Hays and visited him a number of times and treated him with kindness and respect, and that Mr. Hays thought a great deal of him. It further appears that Mr. McCabe had something to do with the management of the property conveyed by Mr. Hays to the missionary society in 1887, and that a number of letters were exchanged and that on one or two occasions Mr. McCabe gave him small presents. This testimony and the other evidence in the record in reference to the relations which these parties sustained toward each other, was of such a character that reasonable minds might differ as to the proper inference to

be drawn. The evidence is not of such a nature as to compel an inference of undue influence, and it was for the judge trying the issues of fact to determine whether such an inference should be drawn. If the trial court declined to draw such inference from the evidence in the record and therefore found against the plaintiffs upon the issue of undue influence, this court could not say as a matter of law that such finding was not sustained by the evidence, even though there was a total lack of evidence tending to rebut undue influence.

In this case, however, there was evidence tending to show that at the times the conveyances in question were made, Elijah Hays was an old man, that his wife was dead, that he had no children, and that his only relatives and heirs consisted of a sister of the half-blood and of the direct and remote descendants of a brother and sister of the half-blood both deceased. It also appears from the evidence that he and his wife were both devoted members of the Methodist Episcopal Church, and that Mr. Hays was especially interested in foreign missions, and that, from the time he was a young man up to the time of the execution of these deeds, he had entertained the purpose and intention of giving his property to the church for the benefit of foreign missions, and had frequently during said time expressed this desire and intention to his neighbors and friends who testified to such facts at the trial. The conveyances sought to be set aside in this action were made to trustees for the benefit of a theological institute located in the Argentine Republic and devoted to the education of native ministers to the end that they might preach and teach the gospel to the natives of that country. The conveyances thus made were consistent with the intention of the grantor so often expressed; and from this evidence, the trial court might have rightly inferred that such conveyances were not procured by any undue or improper influence exercised over the mind of the grantor, but that they were the consummation of a purpose long entertained by the grantor and in

the furtherance of a long cherished desire.    Considered from either standpoint, the evidence in our opinion, is sufficient to sustain the finding.

Only one further question remains to be decided.    The trial court, over the objection of appellants permitted the defendants Royse and Alleman to testify as to what was said and done by Elijah Hays at the time the deeds in controversy were executed.    This was a suit by heirs to obtain title to property in the right of an ancestor within the meaning of §522 Burns 1908, §499 R. S. 1881. Under the provisions of this section, none of the parties to the suit were competent witnesses as to any matter which occurred prior to the death of the ancestor.    *Taylor* v. *Duesterberg* (1886), 109 Ind. 165, 9 N. E. 907; *Ashmead* v. *Reynolds* (1892), 134 Ind. 139, 33 N. E. 763, 39 Am. St. 238.

In this case, however, the mental capacity of Elijah Hays to make a deed was in issue.    The complaint averred that he was of unsound mind and witnesses were introduced by appellants who testified that in their opinion he was of unsound mind at the time the deeds were executed.    This warranted the appellees in calling witnesses to controvert this question, and the parties to the suit were competent to testify upon this issue and to give an opinion as to whether the grantor was of sound mind.    *Lamb* v. *Lamb* (1885), 105 Ind. 456, 5 N. E. 171; *Burkhart* v. *Gladish* (1889), 123 Ind. 337, 24 N. E. 118.    A person who is not an expert can not give his opinion as to the mental condition of another without testifying to the facts upon which such opinion is based.    This necessarily required the witnesses in this case to testify to matters occurring prior to the death of Elijah Hays.    In the case of *Burkhart* v. *Gladish, supra,* it was said: "It would perhaps be impossible to fix any exact rule which would be an inflexible guide in all cases, but in giving the facts upon which the witness bases his opinion, it can not be doubted

that he should be permitted to state every fact which could reasonably be made the foundation of an opinion as to the mental condition of the testator. If not permitted to state all the facts, it is evident that the rule which permits parties to testify as to the mental condition of the testator would be of little value, as the court or jury would be without the means of weighing such opinions.''

It is apparent from the decisions cited, that the court did not err in permitting these witnesses to testify as to what was said and done at the time of the execution of the deeds as a foundation of an opinion as to the mental capacity of the grantor; but such testimony did not tend to prove anything which was there said or done as a substantive fact. Such testimony could be considered in determining what weight should be given to the opinion expressed by the witness upon the subject of the mental capacity of the grantor, but it could not be considered upon the issue of undue influence or for any purpose other than that stated. It is to be presumed that the trial court considered this evidence only in connection with the issue upon which it was admissible. Judgment affirmed.

NOTE.—Reported in 100 N. E. 385. See, also, under (3) 13 Cyc. 736; (4) 13 Cyc. 753; (6) 38 Cyc. 1517; (7) 13 Cyc. 737; (10) 40 Cyc. 2269; (11) 40 Cyc. 2343; (12) 17 Cyc. 142.