## JOSE ET AL. *v.* HUNTER ET AL.

[No. 7,881. Filed November 26, 1913. Rehearing denied January 16, 1914. Transfer denied January 27, 1916.]

1. EXCEPTIONS, BILL OF.—*Contents.—Objections to Pleading.*—An original bill of exceptions provided for by §657 Burns 1908, Acts 1897 p. 244, should contain nothing but the evidence and matters incident thereto, so that no question is presented on an objection to the filing of a supplemental complaint set out in the original bill of exceptions. p. 579.
2. EJECTMENT.—*Burden of Proof.*—In an action for possession of real estate the burden is on the plaintiff to establish by affirmative proof his title and right to possession. p. 580.

3. EJECTMENT.—*Title to Support.*—Plaintiff in an action for possession of real estate must recover on the strength of his own title and not on the weakness of that of his adversary. p. 580.

4. DEDICATION.—*Streets.*—*Ownership of Fee.*—One having a perfect title to the lots abutting on each side of a street theretofore laid out and dedicated for a street, has title of equal strength and validity to the strip included in the street. p. 581.

5. EJECTMENT.—*Evidence.*—*Erroneous Description in Deed.*—Where plaintiff sought the recovery of a strip of land on which his lots abutted and which had formerly been a public street, a deed to plaintiff's predecessor in title, showing that the strip had been laid out as a street, was not inadmissible in evidence simply because of an error in the description of the land conveyed and apparent on the face of the deed. p. 581.

6. EJECTMENT.—*Evidence.*—*Deeds.*—Where plaintiff, who owned the lots abutting on each side of a vacated street, sought to recover possession of the strip formerly included in the street, all the conveyances showing plaintiff's chain of title to the lots back to the original owner who dedicated the strip, as well as any evidence showing or tending to show that the strip was laid out or dedicated for a street, was admissible. p. 582.

7. DEDICATION.—*Vacation.*—*Reversion to Abutting Owner.*—In order that land embraced in a street which has been vacated may revert to the abutting owners, such land must have been originally laid off or dedicated for a street by those who at the time owned the land abutting on each side thereof. p. 583.

8. EJECTMENT.—*Occupying Claimants.*—*Evidence.*—*Admissibility.*— Where defendant in an action for possession of real estate sought by cross-complaint to recover for improvements under the occupying claimant's statute, testimony of defendant offered in support of the cross-complaint to the effect that a certain lawyer advised him that he could obtain complete title by bringing suit, and that he did take the action he was advised to take, was not within the rule that where a state or condition of mind becomes material in giving character to an act, the advice of counsel under the influence of which the act was done is controlling, since it did not relate to the state or condition of defendant's mind at the time he made the improvements, and was properly excluded not only on that ground but also on the ground that it involved the conclusion of the witness. p. 584.

9. TRIAL.—*Objections to Evidence.*—*Evidence Admissible in Part.*— Where competent and incompetent evidence is blended together and offered as a whole, it is not error to sustain an objection to the whole. p. 586.

10. EJECTMENT.—*Occupying Claimants.*—*Recovery for Improvements.*—*Good Faith.*—*Presumption and Burden of Proof.*—Under §1121 Burns 1908, §1074 R. S. 1881, providing for the recovery by an occupying claimant for taxes and for improvements when made

Jose *v.* Hunter—60 Ind. App. 569.

in good faith under color of title, the occupying claimant has the burden of proof on the question of good faith, and is aided by the presumption of good faith in so far only that such presumption will determine the question in his favor in the absence of evidence to the contrary sufficient at least to weigh equally with it. p. 586.

11. EJECTMENT.—*Occupying Claimants.—Recovery for Improvements.—Color of Title.—Good Faith.*—Where the findings show color of title in an occupying claimant, such finding, in the absence of anything to the contrary, would give rise to the presumption of good faith in the making of the improvements for which recovery is sought, but a further finding that the improvements were made with full knowledge of the rights of plaintiff is inconsistent with the theory that they were made in good faith. p. 588.

12. EJECTMENT.—*Findings.—Right to Possession.*—In an action in ejectment, a conclusion of law that plaintiffs are the owners in fee simple and are entitled to possession, can not stand where there was no finding that plaintiffs were entitled to the possession of the real estate in controversy, and the omission is not cured by a finding that title "rested" in plaintiffs. pp. 588, 589.

From Superior Court of Marion County (79,933); *Pliny W. Bartholomew*, Judge.

Action by Erskine E. Hunter and another against Oscar A. Jose and another. From a judgment for plaintiffs, the defendants appeal. *Reversed.*

*Charles A. Dryer*, for appellants.
*Williams & Schlosser*, for appellees.

HOTTEL, J.—Appellees who are husband and wife, filed their complaint in the court below in two paragraphs. The first paragraph is in the usual form in ejectment and alleged that appellees were the owners in fee simple and entitled to the immediate possession of the following real estate in Marion County, State of Indiana, to wit: "a part of Nicholas Jose's Second Pleasant Valley Addition to said city, a plat of which addition is recorded in plat book 9, page 103 of the records of the recorder's office of said county and particularly described as beginning at the northwest corner of lot 32 in said addition, thence running north 40 feet; thence east 139 feet; thence south to the northeast corner of said

lot 32; thence west along the north line of said lot 32, 139 feet to the place of beginning; the ground thus described being designated on said plat as Herman or Hart Street." The second paragraph seeks to quiet title to the same real estate.

Appellants, who are also husband and wife, filed a cross-complaint against appellees, claiming to be the owners and entitled to possession of the same real estate and asking that their title be quieted. Appellant, Oscar A. Jose, filed a second paragraph of cross-complaint in which he, as an occupying claimant under the code, sought to recover for improvements made on said real estate aggregating $2,350 and taxes paid by him aggregating $120.

The cause was put at issue by general denial to each paragraph of the complaint, and cross-complaint. There was a trial by the court and after it had begun, appellees, by permission of the court filed a supplemental complaint in which they averred in substance that at the time of the filing of their complaint the real estate described therein was burdened with an easement of a street in favor of the public and citizens of the city of Indianapolis, Indiana, and that by proceedings duly had by the board of public works said easement and street was vacated on August 21, 1907. Thereupon the appellants filed answer in general denial to the first and second paragraphs of appellees' complaint and the supplemental complaint. At the request of the parties, the court made a special finding of facts and stated its conclusions of law thereon. Judgment was rendered for appellees adjudging that they were the owners in fee simple of said real estate and that they recover possession thereof together with $50 damages, and that the claim of the appellants to said real estate was without right and unfounded and that appellees' title thereto be quieted

and that appellants take nothing by their cross-complaint. From this judgment the appellants appealed and assigned as error: (1) That the court erred in its first, second and third conclusions of law and each of them separately stated upon the special finding of facts. (2) That the court erred in overruling the appellants' motion for new trial.

Appellees contend that the real estate which they seek to recover by this action was, at the time the action was begun, a street known as Herman or Hart Street, lying between two lots in said city, to wit, between lots 13 in Bradley's subdivision, at one time called Reeves' Subdivision, and lot 32 in Jose's Second Pleasant Valley Addition; both of which lots were owned by appellees when this action was brought and each of which abutted on said street. It is admitted by the parties that on August 24, 1857, Joseph F. Wingate was then the owner of the following described real estate: "Part of the W. $\frac{1}{2}$, N. E. $\frac{1}{4}$, Sec. 18, T. 15 N., R. 4 E., bounded as follows: commencing 5 chs. from N. E. corner of said land, thence West 5 chs., thence South 20.18 chs., thence East 5.14 chs., thence North 20.18 chs., to place of beginning, containing 10 acres." This description includes the strip of real estate in controversy.

The first and second findings are to the effect that Archibald C. Reed in 1821 procured from the United States by entry the 80 acres, of which the ten acres above described is a part and that such 80 acres descended by intermediate conveyances, deeds, wills and descent cast by the statute until in August, 1857, Joseph F. Wingate became the owner of the fee simple title of the ten acres above described. The substance of the remaining findings follows: Through intermediate conveyances from said Wingate the following persons became the respec-

tive owners in fee simple of parts of said ten acres as follows: (3) On November 18, 1867, John B. E. Reid became the owner in fee simple of part of the west half of the northeast quarter of said section eighteen (18), township fifteen (15), range four (4), bounded as follows: Commencing in the center of the public road 10 chains west of the northeast corner of said tract of land, and running thence south 546 feet, thence east 145 feet, thence north 546 feet, thence west 145 feet to the place of beginning. Subject to road on north thereof. (4) On October 12, 1869, George H. Heitkam became the owner in fee simple of that part commencing 5 chains west of the northeast corner of the west half of the northeast quarter of said section eighteen (18), township fifteen (15), range four (4), and running thence west 145 feet to a *forty-foot street,* and thence south along the *east side* of *said street* 546 feet to another *forty-foot street,* thence east on the north line of said *last named street* 145 feet, thence north 546 feet to the place of beginning; except 30 feet off the north end of the same which is taken up and included in the public highway called the New Bethel gravel road; that the deed from Wingate and all those intermediate and to Heitkam contained the description above set out of the streets on the west and south. (5) On September 26, 1870, Nicholas Jose became the owner in fee simple of part of the west half of the northeast quarter of section eighteen (18), township fifteen (15), range four (4), commencing 586 feet south of a point 5 chains west of the northeast corner of said land, thence west 185 feet, thence north 40 feet, thence west 145 feet, thence south 754 feet, thence east 330 feet, thence north 714 feet to the place of beginning. (6) These tracts just described comprised all of the ten acres acquired by Joseph F. Wingate except the

street referred to in Heitkam's tract. (7) On
September 28, 1870, Joseph F. Wingate conveyed by
quitclaim deed to Nicholas Jose, John B. E. Reid
and George H. Heitkam, then the owners of said
ten acres as hereinbefore described, the following de-
scribed part of said ten acres. A piece of ground laid
out and to be used as a street 40 feet in width and
580 feet in depth bounded as follows: being that
part of the west half of the northeast quarter of
section eighteen (18), township fifteen (15), range four
(4), commencing at a point 475 feet west of the north-
east corner of section eighteen (18), township fifteen
(15), range four (4), and running thence west 40 feet
to a point, thence south 586 feet to a point; thence
east 185 feet to a point; thence north 40 feet to a
point; thence west 145 feet to a point; thence north
546 feet to the place of beginning. That said deed
contained an error in describing the location of said
streets in omitting the words "The west half of the
northeast quarter of" from the description, and said
deed was intended to convey the street mentioned
in the Heitkam description above. (8) On April 5,
1881, Clarissa J. Reeves who through intermediate
conveyances had become the owner in fee simple
of the Heitkam tract above described, executed a
plat of the same containing 10 lots, which plat
was recorded May 9, 1881, in plat book 8, page 17.
In this plat the streets on the west and south, be-
ing the land described in finding number seven were
shown as having been given by J. F. Wingate.
(9) On November 5, 1888, Giles S. Bradley, who
had become the owner in fee simple of the 10 lots in
Clarissa J. Reeves' Subdivision, through intermedi-
ate conveyances from her, subdivided the same into
13 lots as shown by plat in plat book 9, page 68.
Lot 13 thereof abutting on and along the north side
of the street shown on the south of the subdivision

is shown at Nos. 4, 6 and 8 above. (10) On April 6, 1895, the plaintiffs became the owners in fee simple through intermediate conveyances from Giles S. Bradley, of said lot 13 and in them the title now rests. (11) On April 4, 1889, Nicholas Jose, his wife joining, subdivided his tract above described into 35 lots numbered 21 to 55, and designated the subdivision Jose's Second Pleasant Valley Addition to the city of Indianapolis. The plat thereof was approved by the city commissioners and is recorded in plat book 9, at page 103, and shows, as Herman Street, the street mentioned at Nos. 4, 6, 7 and 8 above, on the south side of the Reeves and Bradley subdivision above named in Nos. 8 and 9, lot No. 32 of said Jose's addition abutting on and along the south side of said street. (12) On February 23, 1895, Nicholas Jose and wife conveyed by warranty deed said lot No. 32, named just above, to the plaintiffs and in them the title now rests. This deed was made pursuant to a contract or title bond by which said Jose agreed to convey said lot in fee simple, according to the plat of said addition in book 9, together with all rights and appurtenances thereto, and at the time of said contract of purchase Jose represented such lot 32 to be a corner lot contiguous to and abutting on the south side of said Herman street. (13) On the plat of Jose's Second Pleasant Valley Addition, the street on the west side of the Reeves and Bradley subdivisions is extended through this addition and is shown as Quince Street, and the street on the south of said subdivision is shown as Herman Street. By ordinance of the city of Indianapolis duly passed, approved February 20, 1891, annexing certain terrinory, these, with all other streets in Jose's said addition which is included in the territory annexed, were made part of the city's system of streets.

Jose v. Hunter—60 Ind. App. 569.

By ordinance approved September 26, 1896, the name of Quince Street is changed to Nelson Street, and Herman Street, 'extending from Quince Street east, the first street south of Prospect Street', is changed to Hart Street. (14) A resolution of the board of public works of the city of Indianapolis for the improvement of the sidewalks adopted in 1901, shows Hart Street intersecting Nelson Street and the plans for the work show turnouts, approach walks and cross walks at Hart Street, and said improvement was made and completed in that year in accordance with such plans and said approach walks, turnouts, and cross walks still exist as made and are identical with those at other street crossings. (15) Prior to 1904 this piece of ground was never listed for taxation but was shown on the assessor's plat books as Herman and subsequently Hart Street. (16) On October 5, 1903, a decree was entered by the Superior Court of Marion County in cause No. 65,063 in which the heirs of Nicholas Jose, then deceased, were plaintiffs and the city of Indianapolis alone was defendant, by which the title to Hart Street was attempted to be quieted in said plaintiffs, and in their complaint therein they alleged that on April 4, 1889, Nicholas Jose owned said tract of ground and platted the same as a street of his Second Pleasant Valley Addition. On December 14, 1903, the rest of the heirs conveyed the same by quitclaim deed to the widow and on the same day she conveyed the same by warranty deed to Oscar A. Jose, cross-complainant herein. The plaintiffs herein were not parties to said suit and had no knowledge of it until long after. (17) Prior to 1904 said Herman Street or Hart Street being the identical tract described in plaintiff's complaint was used by the public as a highway to travel between Quince

or Nelson Street to the first alley east. (18) Early in the year 1903, before said cause No. 65,063 was instituted, Oscar A. Jose, defendant, visited the home of plaintiffs and asked them to aid him in procuring the vacation of said Hart Street, but plaintiffs refused and told him lot 32 had been bought by them from his father as a corner lot, that they had paid him more for it because of that fact and that if they wanted Hart Street vacated, they would do it themselves. (19) In March, 1909, defendants began the erection of a double tenement house of ten rooms on said Hart Street, the tract described in plaintiff's complaint. Before the foundation of said house was finished, plaintiffs first became aware of defendant's purpose to build it and at once notified Oscar A. Jose in writing to cease work and remove all material therefrom. (20) Defendants, with full knowledge of the rights of the plaintiffs in and to said tract of ground, and that said Hart Street had not been vacated in June, 1904, built a ten-room tenement house thereon, and have at all times since then held possession of said tract to the exclusion of the plaintiffs. (21) On or about November 22, 1907, the board of public works upon the petition of plaintiffs, vacated said Hart Street, and assessed benefits for said vacation against them. (22) The improvements placed upon said strip of ground are of the value of $2,350, and the rental value of said double house is $20 per month; the value of the real estate without the improvements is of the value of $700; the rental value of the lot without the improvements is ten dollars per year; Oscar A. Jose paid the taxes upon the land and improvements for the years 1904, 1905, 1906 and 1907 in the total sum of $120. Appellees paid taxes on the property for the year 1908, and the assessment for sewer in Pleasant Run $13.99, which sums were paid by them

on the 11th day of February, 1910.   Defendant
Oscar A. Jose has not paid any rent for said lot.   He
collected the entire rent for said land and improve-
ments for the years above mentioned in the sum of
$1,383, and since the completion of said improve-
ments has paid the total sum of one hundred and
twenty-eight dollars ($128) for repairs and insur-
ance on said property.

On the foregoing facts the court stated its con-
clusions of law as follows:   (1)   That the law is with
the plaintiffs; that the plaintiffs are the owners in
fee simple of the real estate described in plaintiff's
complaint and that they are entitled to the posses-
sion thereof and to have their title to the same
quieted.   (2)   That the defendants are not entitled
to any relief or any judgment in their favor on the
cross-complaint herein.   (3)   That the plaintiffs
should recover from the defendants fifty dollars
($50) damages; that the costs of this action should be
taxed against the defendants.

Appellants insist that the trial court erred in per-
mitting appellees to file their supplemental com-
plaint.   The transcript does not disclose any
1.   record entry showing any objections to the
supplemental complaint being filed, nor does
it disclose any motion to reject or strike it from the
files.   Neither paragraph of the original complaint
was questioned by demurrer in the trial court, and
the sufficiency of such complaint is not questioned
by any assignment of error in this court.   The only
objections of any kind to either the original or sup-
plemental complaint that we have been able to find
in the record is an objection to the filing of such com-
plaint set out in the original bill of exceptions con-
taining the evidence which is incorporated in the
record.   The Supreme Court and this court have
expressly held that an original bill of exceptions

provided for by §657 Burns 1914, Acts 1907 p. 244, should contain nothing but the evidence and matters incident thereto. *McCoy* v. *Able* (1892), 131 Ind. 417, 30 N. E. 528, 31 N. E. 453; *Leach* v. *Mattix* (1897), 149 Ind. 146, 48 N. E. 791; *Stapf.* v. *State* (1904), 33 Ind. App. 255, 71 N. E. 165.

It follows that on the question of the filing of the supplemental complaint, the appellants are in the same position they would have been if they had made no objections to the filing thereof, and hence are in no position to complain of the ruling of the court which permitted such filing.

Disregarding, for the present, the questions presented by appellants' second paragraph of cross-complaint, we will consider the question of the sufficiency of the evidence to sustain the decision of the court on the issues tendered by the complaint. A great part of the evidence is documentary and is embodied in the findings of fact, the substance of each of which we have set out. Each and all of these findings have some evidence and most of them undisputed evidence for their support. It is insisted by appellants in effect that the evidence does not affirmatively show appellees' title and right to possession, but that the decision of the court and its first conclusion of law rest on the weakness of appellants' title rather than on the strength of appellees' title. Appellants' contention that in an action for possession of real estate the burden

2. is on the plaintiff to establish by affirmative proof his title and right to possession is well settled by the authorities. *Pittsburgh, etc., R. Co.* v. *O'Brien* (1895), 142 Ind. 218, 222, 41 N. E. 528; *Roots* v. *Beck* (1887), 109 Ind. 472, 9 N. E. 698. It is equally well settled that the plaintiff must

3. recover on the strength of his own title and not on the weakness of that of his adversary.

*Furst* v. *Satterfield* (1909), 44 Ind. App. 613, 618, 619, 89 N. E. 906, and authorities there cited.

Appellants make their mistake in assuming that appellees' title depends alone on the conveyance of date, September 28, 1870, wherein Joseph F. Wingate conveyed by quitclaim to Jose, Reid, and Heitkam. They do not contend that there is any defect or weakness in appellees' title to the two lots 13 and 32, abutting on the strip of ground in question. The validity and strength of appellees' title to such lots being conceded, it must follow, under the law, that equal validity and strength of title exists in them to the strip of ground in question, if, at the time appellees bought such lots abutting thereon, the said strip of ground was one of the streets of the city of Indianapolis, and provided also, that such strip had been laid out or dedicated as such street, or as a highway, by appellees' remote grantor, Joseph F. Wingate, at a time when he owned and sold the abutting land on either side thereof. The quitclaim deed of September 28, 1870, by Wingate to Jose, Reid and Heitkam was only one of the items of evidence which tended to prove such facts. The other evidence, and the other facts found by the court, showed that the description in each of the separate deeds of Reid, Heitkam and Jose to their respective tracks abutting on said street, were made with reference to such street; that in the Heitkam deed the streets were expressly mentioned and referred to in the description; that all the abutting subdivisions and plats afterwards filed were made with reference to such strip being a street, and the city of Indianapolis by its proper officers so recognized it, and made improvements with reference to it, and changed the original name thereof. The deed of September 28, 1870, from Wingate, referred to the piece of

ground then conveyed as a "piece of ground laid out and to be used as a street", showing that it had been laid out by Wingate before the execution of such quitclaim deed. The contention of appellants that this deed was improperly admitted in evidence because it does not describe the strip of ground in question, is without merit. The error in description is apparent on the face of the deed. The piece of ground is described as being in the west half of the northeast quarter of section eighteen (18) and yet the beginning point is designated as being 475 feet west of the northeast corner of such section.

It appears from the record that appellants offered as a part of their chain of title a deed of date June 30, 1904, from the heirs of Joseph F. Wingate and Lucy Wingate, his wife, in which they release and quitclaim to appellant, Oscar A. Jose, the strip of ground in question and it is expressly stated in such deed that it is made "for the purpose of correcting a certain deed executed by Joseph F. Wingate and Lucy A. Wingate his wife, to Nicholas Jose, John B. E. Reid, and George H. Heitkam, dated September 28, 1870, and recorded in land record 'TT', page 219 of the Marion County recorder's office, by which said Wingate and wife, attempted to convey a tract of ground to said Jose, Reid and Heitkam, and erroneously described the same as commencing four hundred and seventy-five (475) feet west of the northeast corner of section eighteen (18), township fifteen (15) north, of range four (4) east, instead of starting the same four hundred and seventy-five (475) feet west of the northeast corner of the west half of the northeast quarter of said section eighteen (18)." In this connection it is insisted by appellants that there was no issue presented by the pleadings for the reformation of the deed by Wingate and wife

to Jose, Reid and Heitkam, and that the evidence of-
fered for such purpose was improperly admitted.
As before indicated, appellees were not seeking to
reform or correct such deed nor were they seeking to
reform or correct any instrument or conveyance in
their chain of title to lots 13 and 32 abutting on said
street. The theory of appellees' complaint is that the
strip of ground in question is, or was before its vaca-
tion, a street and that as the owners of lots 13 and
32 abutting on either side of such street, they own
to the center thereof. Hence any evidence which
showed or tended to show that such strip of ground
had been laid out or dedicated as a street was ad-
missible under the issues. The evidence objected
to tended, at least, to prove this fact, and hence was
admissible for this purpose. So, too, appellees' claim
being based on the ownership of lots 13 and 32 abut-
ting on said strip of ground, all the conveyances
showing appellees' chain of title to said lots back to
said remote grantor who is claimed to have laid off
and dedicated the strip of ground, were proper and
admissible.

It is urged by appellants that because appellees
own the lots on either side of said street it does not
follow that they own to the center of such
7.     street, but that the proof should have gone
further and shown that such street or high-
way was dedicated or laid off by one who at the time
of such dedication owned the abutting land on either
side. We have no doubt that this contention of ap-
pellants is also correct. While some of the authori-
ties contain some general statements to the effect
that the abutting lot owners on a street own to the
center of such street, such statements are too
broad and general and were in each case no
doubt intended to have general application to
owners of lots along such street only as had been

laid out or dedicated by a person who at the time of such dedication, owned the abutting land on either side of such street or where the abutting property owners on each side of the street had donated or dedicated their half of the land over which the street passed. To this effect are the following cases: *Erwin* v. *Central Union Tel. Co.* (1897), 148 Ind. 365, 46 N. E. 667, 47 N. E. 663; *Haslett* v. *New Albany Belt, etc., R. Co.* (1893), 7 Ind. App. 603, 34 N. E. 845. Both the evidence and the findings herein as before indicated not only show that the strip of ground in question was a street at the time the appellees bought their lots abutting thereon, but they also show, in effect, that it was laid off and dedicated by appellees' remote grantor, J. F. Wingate, who, at the time of such dedication, owned the abutting land on either side thereof; that his grantees who purchased such abutting land subdivided and platted it into city lots with reference to such street, which was indicated on such plats, and, in some of the plats, referred to as having been given by said Wingate, and the lots so platted were bought and sold with reference to such plats and the streets shown thereon. The evidence and the findings bring the case clearly within the rule announced in the cases, *supra*, and completely meet the requirement of appellants' contention.

We next consider the questions which arose during the trial relating to the admission of evidence affecting the issues tendered by the appellants' cross-complaint based on the occupying claimant's statute. When the appellant, Oscar Jose, was on the stand testifying, he stated that it was suggested to him that the strip of ground in dispute was never used and ought to go to his mother, and that he was asked to investigate and find out whether she would be entitled to it again.

The witness was then asked to tell what he did and in answer thereto stated, among other things, that he consulted Judge Thompson at the Bobbs-Merrill Company and asked him to look the matter up for him; that later he went back to see Mr. Thompson and he said—. At this point an objection was interposed and appellants then offered "to prove by this witness that he consulted Judge Thompson, who was practicing law and had been for years at the Winchester bar and had moved to this city after many years of experience at the bar, and he advised him that he could obtain complete title of this property by bringing suit, and that pursuant to that advice he did take such action as he advised him to take." The objection was sustained and the offered evidence excluded. It is insisted that this was error and in support of this contention it is urged that "whenever a state or condition of mind becomes material in giving character to an act performed the advice of counsel learned in the law, under the influence of which the act was done, has ever been deemed and held to be controlling." Appellants cite in support of this position: *Cutter* v. *State* (1873), 36 N. J. L. 125; *People* v. *Whaley* (1827), 6 Cow. (N. Y.) 661; *Commonwealth* v. *Shedd* (1804), 1 Mass. 227; *Roy* v. *Goings* (1885), 112 Ill. 656; *Sharpe* v. *Johnson* (1882), 76 Mo. 660; *Smith* v. *Austin* (1882), 49 Mich. 286, 13 N. W. 593; 2 Greenleaf, Evidence §459; Cooley, Torts 183; *Cuthbert* v. *Galloway* (1888), 35 Fed. 466; *Mesher* v. *Iddings* (1887), 72 Iowa 553, 34 N. W. 328; *Cahill* v. *Benson* (1898), 19 Tex. Civ. App. 30, 46 S. W. 888; *Whitney* v. *Richardson* (1858), 31 Vt. 300. The authorities in effect hold as appellants contend, but the offered evidence is not brought within their application. The state or condition of mind here involved related to the time

appellant made the improvements for which he seeks to be reimbursed. It related to his good faith in making such improvements and even if it should be admitted that a part of the offered evidence was competent as throwing light on such question, yet the offer involved the conclusion of the witness that he had followed certain advice given by the attorney and perfected the title to the real estate involved in accordance therewith. When competent and incompetent evidence is blended together and offered as a whole, it is not error to sustain an objection to the whole. *City of Terre Haute* v. *Hudnut* (1887), 112 Ind. 542, 549, 13 N. E. 686; *Cincinnati, etc., R. Co.* v. *Roesch* (1891), 126 Ind. 445, 447, 448, 26 N. E. 171. The witness was permitted to testify that he turned the matter over to Mr. Myers, an attorney, and that he brought suit to quiet title and after quieting title advised him that it was safe to put a house on the premises. Mr. Myers, the attorney, was also permitted to testify on the same subject. Appellant got the benefit of all the evidence which the authorities cited warrant, and the offered evidence was properly excluded.

We next consider whether the decision of the court on the issues presented by the cross-complaint of appellant, Oscar Jose, is sustained by sufficient evidence, and whether the court erred in its second conclusion of law. Practically the same question is presented by each of the two errors relied on. The difficult question presented by these alleged errors is to determine whether, under the evidence and the findings, the appellant acted in good faith in making the improvements for which he seeks to be reimbursed. Appellants contend that the burden was on appellee to show bad faith, but we can not agree with this contention.

Appellants' cause of action for improvements and taxes is statutory and to obtain the benefits of such statute the decisions require that they shall bring themselves strictly within its terms. The statute expressly provides that recovery may be had for such improvements and taxes when made in good faith under color of title. §1121 Burns 1914, §1074 R. S. 1881; *Doren* v. *Lupton* (1900), 154 Ind. 396, 399, 56 N. E. 849; *Chesround* v. *Cunningham* (1832), 3 Blackf. 82; *Westerfield* v. *Williams* (1877), 59 Ind. 221, 224. It seems clear that under this statute the burden of proof on the question of good faith was on appellants. Language in some of the decisions may indicate the contrary, but this, we think, results from the presumption of good faith which appellants have in their favor. Bad faith like fraud is never presumed but the presumption is in favor of good faith. *Hilgenberg* v. *Northup* (1893), 134 Ind. 92, 93, 94, 33 N. E. 786; *Fish* v. *Blasser* (1896), 146 Ind. 186, 188, 45 N. E. 63.

The appellants start with such a presumption in their favor and unless the evidence be sufficient to outweigh such presumption or to weigh equally with it, such presumption will be sufficient to turn the scales in appellants' favor, but notwithstanding this presumption, the burden of proof on such question was at all times on appellants, and if the evidence of bad faith weigh equally with the evidence of good faith considered and weighed in connection with such presumption, then the decision would have sufficient evidence for its support. For a discussion of the effect of such presumptions see: *Keys* v. *McDowell* (1913), 54 Ind. App. 263, 100 N. E 385, and authorities there cited; *Bates* v. *Pickett* (1854), 5 Ind. 22, 61 Am. Dec. 73; *Adams* v. *Slate* (1882), 87 Ind. 573, 575. Appellants having the burden of this issue it follows that the findings must

show good faith or must show facts from which the presumption or inference of good faith necessarily arises before they would be entitled to a conclusion of law in their favor on such issue. There is no express finding of good faith, but we think that under §1128 Burns 1908, §1081 R. S. 1881, and the authorities construing the same, the findings clearly show color of title in appellants when they erected their building, and such finding, under the authorities, seems to be sufficient to raise the presumption of good faith. *Hilgenberg* v. *Northup, supra; Fish* v. *Blasser, supra.* If nothing further on this subject were shown by the findings we would feel that the authorities cited would require us to hold that the conclusion of law on this issue should have been in appellants' favor but the court further found on this subject that "Defendants with full knowledge of the rights of the plaintiffs in and to said tract of ground and that said Hart Street had not been vacated in June, 1904, built a ten-room tenement house thereon," etc. It will be observed that the court found that it was with full knowledge of the rights, "not claims", of plaintiffs that the defendants built their house. Appellants might have built with knowledge of the *claims* of appellees, and yet built in good faith, but if they *actually knew the rights* of appelles, they could not have so built. *Knowledge* of the *rights* of appellees when they built is inconsistent with good faith. This finding we think overcomes any presumption arising from appellants' color of title and warranted the court's second conclusion of law, and there was some evidence to support such finding.

Since the filing of the original opinion in this case, a petition for a rehearing has called our attention to the fact that we overlooked a question presented by the appellants in their original briefs. It is insisted that the trial

court failed to include in its special finding of facts a finding that appellees were entitled to the possession of the real estate in controversy. A careful examination of the finding discloses that appellants are correct in their contention. Such a finding seems to be made necessary both by the statute on which this action is based and by the decisions construing it. §§1096, 1100 Burns 1914, §§1050, 1054 R. S. 1881; *Pittsburgh, etc., R. Co.* v. *O'Brien, supra.*

The absence of said finding of fact is fatal to the first conclusion of law and the judgment based thereon and necessitates a reversal of the judgment. Other questions are discussed, but they are not of controlling influence and may not arise on a second trial, and hence need not be considered. Judgment reversed with instructions to the court below to grant a new trial and for further proceedings consistent with this opinion. Lairy, C. J., Ibach, Caldwell, Felt and Shea, JJ., concur.

## ON PETITION FOR REHEARING

Hottel, J.—Appellees in a petition for rehearing in this case earnestly urge that the facts found by the trial court, taken as a whole, necessitate the inference that the appellees were entitled to the possession of the real estate in controversy. In support of this contention it is urged that appellees' right to the possession of the abandoned street in controversy necessarily rests on their right to the possession of their abutting lots on either side of such street, and hence, that a finding that appellees were entitled to the possession of such lots would of necessity carry with it a finding that they were entitled to the possession of that part of the street in controversy.

The legal proposition involved in this contention, that the right to possession of the lots under the facts

of this case would of necessity carry with it the right to the possession of that part of the street on which they abut, is doubtless correct; but, the trouble with appellees' contention is that there is no finding that they were in possession of or entitled to the possession of the abutting lots. As to such lots there is a finding to the effect that the title to them had been conveyed to appellees and that such title *rested* in them at the time of the trial. This finding would probably necessitate the inference of ownership of such lots, but not *necessarily* an inference of possession or the right to such possession. So far as the finding shows, the lots may have been rented or leased for a period of years and the right to possession thereof may have been in the lessee rather than the owner.

We are aware that some of the more recent cases of the Supreme Court have to some extent relaxed the rule of the inference to be indulged in favor of pleadings, but we do not feel that these cases authorize the inference for which appellees contend in favor of the finding in this case. On the contrary the present holdings of the Supreme Court on the subject of the inferences to be drawn in favor of a special finding of facts support the opinion heretofore rendered in this case and hence the petition for rehearing is overruled.

NOTE.—Reported in 103 N. E. 392, 852. As to chattels or fixtures as subjects of ejectment, see 116 Am. St. 574. As to the general rule that plaintiff in ejectment must recover, if at all, on the strength of his own title, see 18 L. R. A. 781; 45 L. Ed. U. S. 423. See, also, under (1) 3 Cyc 26; (2) 15 Cyc 123; (3) 15 Cyc 20; (4) 13 Cyc 486; 28 Cyc 845; (5, 6) 15 Cyc 135; (7) 28 Cyc 846; (9) 38 Cyc 1335; (10) 15 Cyc 231, 235; (11) 15 Cyc 229; (12) 15 Cyc 166, 169.