**SOUTH BEND CARPETLAND U.S.A., Carpetland U.S.A., Garland Aschenbrenner, Winifred Aschenbrenner, and Philip R. Cohen and Associates, Appellants/Defendants,**

v.

**Melvin H. SANDOCK, Betty Jane Sandock, Sam Sandock and Ruby Sandock, Appellees/Plaintiffs.**

No. 71A02–9003–CV–123.[1]

Court of Appeals of Indiana, Fifth District.

April 30, 1991.

Rehearing Denied July 24, 1991.

1. This case was reassigned to this office on    January 2, 1991.

124 ■

Timothy W. Woods, South Bend, for appellants/defendants.

John C. Hamilton, Doran, Blackmond, Ready Hamilton & Williams, Donald E. Wertheimer, South Bend, for appellees/plaintiffs.

BARTEAU, Judge.

South Bend Carpetland U.S.A., Inc., Carpetland U.S.A., Inc., Garland and Winifred Aschenbrenner, and Philip R. Cohen & Associates (collectively "Carpetland") appeal a judgment in favor of Melvin Sandock, Betty Jane Sandock, Sam Sandock and Ruby Sandock (collectively the "Sandocks") on the Sandocks' complaint for injunctive and monetary relief. Carpetland raises the following issues:

1. Whether parol evidence is admissible to interpret the lease agreement;
2. Whether the trial court's award of loss of bargain damages is contrary to the evidence and law;
3. Whether the trial court's award of punitive damages is contrary to the evidence and law;
4. Whether the trial court's entry of judgment against Carpetland U.S.A., Inc. and Philip R. Cohen & Associates is contrary to the evidence and law; and
5. Whether the trial court's award of attorney fees is contrary to the evidence and law.

We reverse on the first issue; thus, we need not discuss the remaining issues.

## FACTS

The Sandocks leased a storeroom to South Bend Carpetland U.S.A., Inc. ("South Bend Carpetland"), a franchisee of Carpetland U.S.A., Inc. ("Carpetland U.S.A."), pursuant to a written lease agreement dated January 21, 1985. The performance of South Bend Carpetland's obligations under the lease were guaranteed by Garland and Winifred Aschenbrenner. As part of the deal, South Bend Carpetland was to remodel the interior of the store and also remodel the store facade. The agreement called for the Sandocks to pay $15,000.00 toward the remodeling of the facade. South Bend Carpetland was responsible for the cost in excess of $15,000.00.

The plans and specifications for the facade remodeling were developed by the architect, Philip R. Cohen & Associates ("Cohen"), after the lease agreement was executed. Cohen's initial plans called for metal trusses to be used in building the canopy framing, but these plans were changed to provide for wood trusses after Cohen discovered that the county building code allowed the use of wood. The change was made with the approval of South Bend Carpetland, but without consulting with or obtaining the consent of the Sandocks. The actual construction used wooden trusses. When the Sandocks discovered that metal was not being used they objected. South Bend Carpetland, however, continued with the wood construction over the Sandocks' complaint.

The Sandocks filed a complaint against South Bend Carpetland and the Aschenbrenners for injunctive relief and damages and were granted a Temporary Restraining Order on April 12, 1985. On July 3, 1985, the trial court dissolved the TRO and denied the request for an injunction. The Sandocks then filed another complaint for damages adding Carpetland U.S.A. and Cohen as defendants. This cause of action was consolidated with the prior action. On October 19, 1989 the trial court entered judgment in favor of the Sandocks and against all of the defendants.

## STANDARD OF REVIEW

The trial court made specific findings of fact and conclusions of law; thus, we are bound to review the same under the following standard: we first must determine

whether the evidence supports the findings; then determine whether the findings support the judgment. *Porter County Bd. of Zoning Appeals v. Bolde* (1988), Ind. App., 530 N.E.2d 1212, 1215. The judgment will be affirmed if we conclude that the special findings support the judgment and are not clearly erroneous. *ITT Indus. Credit Co. v. R.T.M. Dev. Co.* (1987), Ind. App., 512 N.E.2d 201, 203. A judgment is clearly erroneous where a review of the record leaves us with a firm conviction that a mistake has been made. *Porter County, supra.*

## DISCUSSION

Carpetland contends that the lease agreement does not give the Sandocks the right to approve the plans and specifications for the remodeling of the facade and did not obligate Carpetland to obtain the Sandocks' consent to any changes in the plans and specifications. The Sandocks argue that the lease agreement is ambiguous as to the parties' intentions and that the trial court properly admitted parol evidence to determine such intentions.

The trial court entered the following findings:

3. Paragraph 17 of the Lease provides for the design and fabrication of a new front facade to the premises. Lessors [Sandocks] were to pay up to a maximum of $15,000 of the cost. This has been paid. *The Lease does not provide for a specific plan or specifications for the facade.* A drawing attached to the Lease and initialed by the parties shows an artistic finished appearance only.

4. In February, 1985, plaintiffs were given plans and specifications for the facade calling for metal framing and a metal skin. Plaintiffs were agreeable to these plans. *A metal structure had been discussed in Lease negotiations by the parties.*

\*     \*     \*     \*     \*     \*

13. By the unilateral actions of the defendants and their agents, the *plaintiffs were caused to lose the benefit of their bargain; that is the construction of a metal facade with metal skin on the building.* They are entitled to damages. (R. 31–32, our emphasis).

It is well-established that

[w]here parties enter into a written agreement their rights must be controlled thereby, and, in the absence of fraud or mistake, evidence of prior or contemporaneous collateral agreements on the same subject matter, varying, modifying, or contradicting the written agreement, is inadmissible. Thus, it has been stated that *a written instrument governs, and evidence of prior negotiations, and evidence of such matters as prior expectations and conversations, cannot be allowed to alter its terms.*

*Seastrom, Inc. v. Amick Const. Co.* (1974), 161 Ind.App. 309, 315 N.E.2d 431, 433, *trans. denied* (our emphasis); *see also City of Evansville v. Old State Utility Corp.* (1990), Ind.App., 550 N.E.2d 1339, 1341; *Piskorowski v. Shell Oil Co.* (1980), Ind.App., 403 N.E.2d 838, 846, *trans. denied.*

The lease agreement contains the following provisions relevant to the remodeling:

WHEREAS, the Lessee intends to remodel the storefront and interior substantially in accordance with Exhibits "A" and "B" attached hereto and made a part hereof, which remodeling shall be paid for and completed by May 1, 1985. Exhibit A is an elevation drawing of the facade and Exhibit B is a preliminary floor plan of the Demised Premises.

\*     \*     \*     \*     \*     \*

17. A facade is to be constructed incorporating the entire length of the present canopy.... Such remodeling is to be done by the Lessee subject to all of the aforementioned restrictions as to a no-lien contract for said work to be done by the Lessee.... Lessor shall pay Lessee the cost of remodeling said facade subject to a maximum repayment of Fifteen Thousand ($15,000.00) Dollars or the actual cost, whichever is less, in equal monthly installments.... Lessor shall have the right to procure and transmit a bid for the facade construction based on

the same set of drawings and specifications used by Lessee.

The written lease agreement obligates South Bend Carpetland to have the facade built in accordance with the artist's rendering attached as an exhibit to the contract. The drawing does not specify what materials are to be used in the construction; it merely shows how the finished facade is to look. The agreement also obligates South Bend Carpetland to deliver a set of the plans and specifications to the Sandocks for use in obtaining bids. The agreement does not give the Sandocks the right to approve the plans and specifications.

It is clear from the trial court's findings that it relied on extrinsic evidence to determine the parties' intentions concerning the construction of the facade. The trial court correctly found that the lease itself did not provide that the facade had to be built according to specific plans and specifications, but then found that a metal structure had been discussed by the parties and that the Sandocks had bargained for a metal facade.

■ The trial court erroneously admitted parol evidence to determine the parties' intentions. The written agreement between the parties is unambiguous in its treatment of the facade remodeling. Where the terms of the instrument are unambiguous, evidence of the intent of the parties extrinsic to the contract is inadmissible. *City of Evansville, supra* at 1342. The Sandocks are entitled to a remodeled facade that looks like the artist's rendering and is built in a good and workmanlike manner in compliance with applicable codes and regulations. The trial court specifically found that this is what the Sandocks received. To go beyond the written agreement and consider extrinsic evidence to determine that the parties bargained for a metal structure violates the parol evidence rule. *Id.; Seastrom, supra.*

The trial court's conclusion that the Sandocks did not receive their benefit of the bargain is contrary to the admissible evidence. The trial court's finding of facts supported by the evidence do not support a judgment in favor of the Sandocks. There-fore, we reverse the trial court's judgment entered in favor of the Sandocks and remand with instructions to enter judgment in favor of the defendants.

REVERSED AND REMANDED.

ROBERTSON and STATON, JJ., concur.