Boyce Brown WOMACK,
Appellant–Petitioner,

v.

Anna WOMACK, Appellee–Respondent.

No. 47A01–9207–CV–224.

Court of Appeals of Indiana,
First District.

Dec. 29, 1992.

Rehearing Denied Feb. 19, 1993.

David P. Allen, Salem, Donald M. Frey, Seymour, for appellant-petitioner.

Brent E. Steele, Steele, Steele & Steele, Bedford, for appellee-respondent.

**BAKER, Judge.**

This is an appeal from a marriage dissolution action in which only one issue was litigated: whether Wife should retain title to a particular piece of land and the house located on it. Wife maintained Husband deeded the property to her as a gift *inter vivos;* Husband, on the other hand, insisted he had no intention of making a gift when he allowed title to be placed in Wife's name and further suggested the presence of Wife's undue influence and his own incompetence. The trial court believed Wife and awarded her the property. Husband appeals.

## FACTS

The record reveals that petitioner-appellant Boyce Brown Womack (Husband), age 85 at the time of trial, and respondent-appellee Anna Womack (Wife), age 78 at the time of trial, married on January 29, 1988. Several days after their marriage Husband and Wife executed a "Pre–Nuptial Agreement" in which each agreed, among other things, that each would retain exclusive ownership and control of scheduled property owned before or acquired during the marriage.[1] Husband agreed to "provide the reasonable necessary expenses of support and maintenance of the Wife in a suitable home consistent with his financial ability." *Record* at 151. The agreement also noted that each party was free to make "additional provision for the other, whether by lifetime gift, by future Will or Codicil, by joint or community property, by insurance or otherwise." *Record* at 151.

It appears that Husband and Wife lived tranquilly for most of their 20–month mar-

---

1. That the parties executed a "Pre–Nuptial Agreement" after their marriage is the first of several irregularities suggesting the parties were less than fully alert. Both parties incorrectly reported the year of their marriage to their attorneys. *Record* at 18. Wife thought it was Congressman Lee Hamilton, and not local attorney Bob Hamilton, who drafted the pre-nuptial agreement, and Husband could not remember that he lived in Seymour. *Record* at 26, 185.

riage. The two divided their time between one of Husband's three farm properties and Wife's mobile home, where they had met. Husband purchased a home in Salem, Indiana, but after the couple realized it was too small for them, Husband sold it and the two returned to the main farm. Eventually Husband sold the other two farm properties.

In July of 1990 adversity struck. Husband fell and was hospitalized after apparently suffering a stroke. His pacemaker was replaced and he had kidney trouble. Wife continued the search for a suitable marital home and found one she liked on seven acres of land near Mitchell, Indiana; this property is the subject matter of the dispute. Wife contacted the realtor and asked him to speak with Husband, who by that time was at home. When the two met, Husband told the realtor without much elaboration that the sale would go through, that he did not need to see the house first because it was to be Wife's, and that title would be listed in Wife's name alone. Wife made a $500.00 down payment on the property's $53,400.00 price.

On September 7, 1990, Husband called the bank and unsuccessfully tried to arrange a loan over the telephone, although he had enough money in his checking account to cover the purchase price. Husband, Wife, and Husband's granddaughter then personally went to the bank, where Husband discussed the loan with the bank president. After Husband agreed to secure the loan with his $68,000.00 certificate of deposit, the bank loaned Husband the money to buy the home. According to Wife, Husband told the bank president the property was a gift to Wife and that she would have no liability on the loan. On September 14, 1990, the purchase complete, title to the property was put in Wife's name.

Just two weeks later, Husband filed a petition to dissolve the marriage. The parties agreed that their pre-nuptial agreement prevented the Mitchell property from being lumped in the marital pot, as would ordinarily be done in a dissolution action. After a trial which addressed only the property's disposition, the trial court awarded the home to Wife after finding Husband had competently given it to her and had not been unduly influenced in doing so. Additional facts will be supplied as necessary.

## DISCUSSION AND DECISION

### Standard of Review

■ Wife requested and the trial court prepared findings of fact and conclusions of law under Ind. Trial Rule 52. Accordingly, our standard of review is limited. We first determine whether the evidence presented supports the findings and then whether the findings support the judgment. *Vanderburgh County Bd. of Commissioners v. Rittenhouse* (1991), Ind.App., 575 N.E.2d 663, 665, *trans. denied.* We will reverse the judgment only if it is "clearly erroneous," meaning unsupported by the factual findings and the conclusions based on those findings. *Id.* Findings of fact are clearly erroneous when the record lacks any facts or reasonable inferences to support them. *Id.* When determining whether the findings or judgment are clearly erroneous, we consider only the evidence most favorable to the judgment and the reasonable inferences flowing from that evidence. As always, we refuse to reweigh the evidence or reassess witness credibility. *Id.* at 666. Finally, our standard of review is also affected by whether Husband suffered adverse or negative judgments on the issues of donative intent and undue influence.

### A. Donative Intent

■ At trial Husband attempted to prove title was in Wife's name alone because he and Wife had an agreement that Wife would later repay part or all of the property's purchase price. In other words, he claimed, he had no intention of simply giving the entire property to Wife *inter vivos*. The trial court found there was no agreement and that it was not true Husband had no donative intent when he placed the title in Wife's name. Husband now claims the trial court erroneously placed the burden of proof on him and wrongly

found he intended to give the property to Wife.

There can be no doubt that because Wife was the sole legal owner of the property, Husband bore the burden of proving his assertion that, in reality, the property was at least half his. When he lost his argument that the property was in Wife's name pursuant to an agreement and that he had no donative intent, Husband suffered a negative judgment. A negative judgment is one entered against the party bearing the burden of proof. *Id.* When the court enters specific findings against a party bearing the burden of proof, we will reverse only if the evidence is uncontradicted and supports no reasonable inferences in favor of the decision or if after reviewing the record we are left with a definite and firm conviction a mistake has been made. *Id.*

Contrary to Husband's suggestions, the evidence concerning the existence of both an agreement and donative intent is not uncontradicted. Wife denied that she entered an agreement with Husband to repay the purchase price in whole or in part. She testified Husband told her and others on more than one occasion that the property's purchase was meant to be his gift to her. This testimony was corroborated by the realtor, who described how Husband told him essentially the same thing. The trial court heard testimony that Husband had on several previous occasions been very generous with his children; moreover, when Husband loaned the children money he invariably required them to sign a promissory note acknowledging the loan and promising repayment.

While we acknowledge Husband's testimony that an agreement existed and that no gift was intended, we obviously cannot say the evidence is uncontradicted and supports no reasonable inferences in favor of the trial court's resolution. Neither can we say that we have been left with a definite and firm conviction a mistake has been made on the gift issue. The issue of whether title was listed in Wife's name as a result of a gift or by agreement was a factually sensitive matter that can be resolved only by scrutinizing testimony, judging demeanor, and assessing credibility as a whole. At the conclusion of both the realtor's and Wife's testimony, respectively, the trial court carefully re-questioned both witnesses about the circumstances surrounding the purchase. We, of course, were not present at the trial and are not free to second-guess the trial court's factual findings. *Id.*

The trial court did not err by requiring Husband to prove the property was not Wife's, and the evidence supports the finding that title was in Wife's name alone pursuant to a gift and not because of an agreement. There was no error.

## B. Undue Influence

Husband also claimed title was in Wife's name because Wife unduly influenced him. Because the transfer of title was so disadvantageous to him and because it was between two parties in a confidential relationship, Husband claims the law imposed a presumption that the transaction was constructively fraudulent.

In Indiana, transactions between parties to certain legal and domestic confidential relationships give rise to a rebuttable presumption that the transaction was constructively fraudulent upon a showing that the transaction "resulted in an advantage to the dominant person in whom trust and confidence was reposed by the subordinate." *Lucas v. Frazee* (1984), Ind.App., 471 N.E.2d 1163, 1167. To rebut the presumption, the dominant party must present clear and convincing evidence that the transaction was at arm's length and thus valid. *Id.*

The confidential relationships given in *Lucas* "include attorney and client, guardian and ward, principal and agent, pastor and parishioner, husband and wife, parent and child, and there may be others." *Id.* With regard to these confidential relationships, the law presumes one party (the attorney, the guardian, the principal, the pastor, the parent) is dominant and the other party (the client, the ward, the agent, the parishioner, the child) is subordinate,

and with good reason. *See id.* We fail to see, however, why we should continue to indulge a belief that the marital relationship in and of itself bestows dominant status upon one party (presumably the husband) and subordinate status upon the other party based solely on gender. The list of relationships cited in *Lucas* originated in an era with vastly different expectations and beliefs concerning the roles of spouses (*Lucas* cited *Keys v. McDowell* (1913), 54 Ind.App. 263, 269, 100 N.E. 385, which, in turn, cited even older Indiana cases), and we note contemporary Indiana family law strives to place husbands and wives on equal footing. *See, e.g.,* IND. CODE 31-1-11.5-11 (presumption that equal division of property in marriage dissolution action is reasonable and just).

■■■ We hold the law no longer presumes one party in the marital relationship is dominant and the other subordinate. Instead, the burden of proving undue influence remains on the party seeking to set aside the transaction. Upon a *prima facie* showing that the parties did not deal on terms of equality and that the result was an unfair advantage to the dominant party, the burden shifts to the defending party to demonstrate affirmatively that "no deception was practiced, no undue influence was used, and all was fair, open, voluntary, and well-understood." *Lucas, supra,* at 1167.

■■■ Husband claims that even if he was entitled to no presumption of constructive fraud, he met his burden of proving undue influence and that thereafter Wife did not disprove it. The trial court, however, thought otherwise, declaring Husband's allegation of undue influence "finds no support in the evidence.... There is simply no evidence of any deception or undue influence." *Record* at 19.

Husband's failure to meet his burden of proving undue influence resulted in a negative judgment which we will reverse only if the evidence is uncontradicted or we are left convinced a mistake has been made. *Vanderburgh County Bd. of Commissioners, supra.*

The evidence here is not as malleable as Husband would have us believe. Husband's own testimony is dispositive:

Q: Well, your attorney said something in opening statement about undue influence and I've not heard anything, I'm sorry. Your attorney said something in the opening statement about somebody pressuring you and putting undue influence on you and I have not seen for myself, maybe everybody else in this courtroom has, but I've not seen any evidence of any undue influence. I'm trying to see who twisted your arm or what they did to pressure you to get to do something you didn't want to do. Can you tell be what it was that somebody did to pressure you?

A: No one pressured me.

*Record* at 52. In addition, as the trial court noted, Husband testified that he knowingly and intentionally took out the loan and bought the house, albeit with the expectation that someday he would be repaid at least in part. Moreover, no one at the bank and no one at the real estate office reported any perception of undue influence.

Like the issue of donative intent, whether Wife exercised undue influence was also a factual matter to be resolved by the finder of fact after assessing credibility. The evidence supports the trial court's finding that Husband did not prove Wife exercised undue influence over Husband concerning the decisions to purchase the property and place title in Wife's name. Neither are we persuaded the trial court made a mistake. Even if we were to assume Husband met his initial burden in showing undue influence, the rebuttal evidence Wife presented affirmatively shows the transaction and surrounding circumstances were fair, open, voluntary, and well-understood. There was no error.

## C. Competence

■■■ As a final matter, Husband argues that even if he intended to transfer the property as a gift and even if he was not unduly influenced, the trial court erred when it found he was competent to act as he did. A donor must be competent to

make a gift *inter vivos. Lucas, supra,* at 1168.

 Once again, the evidence on the issue is conflicting, and we do not deny that Husband presented evidence which, if believed, supported his position that he was incompetent at the time. The trial court entered the following findings:

> The only factor which is reasonably in issue is the question of Husband's competency during the relevant period of time.... The evidence reveals that the Husband fell and injured himself in mid-July or early August of 1990, ultimately having to be hospitalized ... the evidence is clear that the Husband was not in good health from the time of his fall to and beyond the date of the purchase of this real estate. Two of his sons from out of state returned due to concern about his future and he was described by his sons as being 'pretty sick,' 'pretty out of it,' and occasionally incoherent during the Labor Day weekend of 1990.

> On the other hand, the evidence indicates that on the date that the loan and cashier's check were obtained, only about three days after Labor Day, the Husband appeared to be quite lucid. He dialed the telephone number of the bank, tried to arrange for the availability of the money by telephone (although he testified at trial he could not remember this detail), traveled personally to Salem to execute the note and obtain the money, and conducted the loan discussions with the bank president. According to the Wife, he even advised the bank president that the Wife had no liability on the note and that this was his gift to her.

> No readily available witness from the realtor's office, the hospital, or the bank testified concerning any perceived confusion, lack of understanding, incoherency, or lack of voluntary will on the part of the Husband during this time frame or during the specific transaction. Furthermore, this contention is inconsistent with the Husband's own testimony that he knowingly and intentionally paid the purchase price on behalf of the Wife, albeit

with the unproved expectation of being repaid.

> This Court finds that the evidence is insufficient to establish that the Husband did not have a reasonable understanding of the nature and terms of the transaction.

*Record* at 20–21. Husband does not contend the evidence cited by the trial court does not exist. It is readily apparent the evidence supports the trial court's finding that Husband was competent to make the gift. The finding, in turn, supports the conclusion that the transaction was a valid gift from Husband to Wife and that therefore Wife keeps the property.

The judgment is affirmed.

RATLIFF, Senior Judge, and ROBERTSON, J., concur.