In the Matter of The Supervised
ESTATE OF Harold C.
GOINS, Deceased.

Ruthana GOINS, Appellant/Cross–
Appellee–Petitioner,

v.

ESTATE OF Harold C.
GOINS, Deceased,

and

Gregory L. Goins, Cathy S. Goins, G &
C Goins Farms, Inc., Appellees/Cross–
Appellants–Defendants.

No. 48A05–9112–CV–405.

Court of Appeals of Indiana,
Fifth District.

June 16, 1993.

Rehearing Denied Aug. 19, 1993.

Richard F. Davisson, Davisson & Davisson, P.C., Anderson, for appellant.

Philip G. Decker, II, Decker & Lawyer, Anderson, John S. Pearce, Pearce & Howard, Noblesville, for appellees.

BARTEAU, Judge.

Ruthana Goins appeals the refusal of the trial court to set aside quit-claim deeds which she executed at the request of her late husband, Harold Goins, relinquishing all of her ownership interest in property once held by her and Harold as tenants by the entireties. Ruthana claims that the deeds should be set aside on the theory of constructive fraud because her husband exercised undue influence over her. Greg Goins, Harold's nephew, cross-appeals the trial court's conclusion that Harold did not make an inter vivos gift to Greg of a certificate of deposit and of a John Deere tractor.

We affirm.

### FACTS

Harold and Ruthana Goins were married for thirty-one years before Harold's death in 1989 after a long struggle with cancer. During his life, Harold was a successful farmer, acquiring over 250 acres of farm property which Harold and Ruthana owned as tenants by the entireties. All of the farming expenses as well as the Goins' living expenses were paid from joint accounts owned by Harold and Ruthana. Ruthana was a housewife during the marriage; however, in 1983, she inherited a 95–acre farm from her father, which she managed by herself. Ruthana also successfully managed cash she received from her father as well as income from the farm. She maintained a separate account for the expenses and income from her farm, and did not contribute any income to the joint accounts owned by her and Harold. Harold and Ruthana did not have any children.

In August, 1988, Ruthana executed three quit-claim deeds, relinquishing all of her ownership interest in the 250 acres. One of the deeds transferred some property to G. & C. Goins Farms, Inc., (G. & C.), the farming corporation owned by Greg and his wife Cathy. The other two deeds transferred the remaining acreage to Harold individually. The deeds were prepared by Harold's attorney at Harold's request, and were executed in the attorney's office. About a week after Ruthana executed the deeds, Harold deeded an acre of this property to his neighbor.

Harold died testate in July, 1989, leaving all of his real property to Greg, subject to a life estate in Ruthana. Ruthana was appointed executrix of the estate after Harold's will was admitted to probate. Several claims were made against the estate by Greg, Irvin Goins, Harold's brother, and Ruthana. Ameritrust National Bank was eventually named as successor personal representative.

The claims that are relevant to this appeal involve only Ruthana, Greg and the estate. Ruthana's claim against the estate sought to have only the deeds she executed in favor of Harold rescinded on the basis of constructive fraud and undue influence. She also initiated a separate action for rescission against Greg and G. & C. (collectively "Greg"). These two claims were consolidated. Ruthana also claimed that Greg owed her $125,000.00 on a note executed in Greg's favor by Ruthana and Harold, and that Greg had converted property of the estate, specifically, a John Deere tractor, a field cultivator, and a backhoe. Ruthana also sought rent from Greg on his use of the equipment.

Greg claimed that he paid off the note when he turned over to Ruthana funds held in a certificate of deposit given to him by Ruthana and Harold. He also claimed that Harold had given him the farm equipment. Greg further claimed the estate owed him for harvesting the crop that had been planted on Harold's farm before Harold's death in July. By agreement of the parties, evidence was heard on the claims against the estate as well as the dispute between Ruthana and Greg at the same time.

After entering extensive findings of fact and conclusions of law pursuant to the

parties' requests, the court held that 1) Harold did not exercise undue influence over Ruthana in the execution of the deeds; 2) Greg did not own the certificate of deposit; therefore, he still owed Ruthana on the note held by her; 3) Ruthana owned the tractor and Greg owed her rent for his use of the tractor; 4) Harold did not give the backhoe to Greg; 5) the field cultivator was Greg's; and 6) G & C Farms was not entitled to reimbursement for farming expenses.

The sole issue raised by Ruthana is:

I.  Whether the trial court's conclusion that Harold did not unduly influence Ruthana is contrary to law.

Restated, the issues raised by Greg on cross-appeal are:

I.  Whether the trial court erred in finding that the certificate of deposit did not belong to Greg and that Greg owed Ruthana on the note; and

II.  Whether the trial court erred in finding that Harold did not make a completed inter vivos gift to Greg of the John Deere Tractor and that Greg must pay Ruthana rent for using the tractor after Harold's death.

## DISCUSSION

■ Here, the trial court entered specific findings of fact and conclusions of law pursuant to the parties' requests. We are therefore governed by the following standard of review: First, we must determine whether the evidence supports the findings. Second, we must determine whether the findings support the judgment. The judgment will be affirmed if we conclude that the special findings support the judgment and are not clearly erroneous. A judgment is clearly erroneous where a review of the record leaves us with a firm conviction that a mistake has been made. *South Bend Carpetland U.S.A. v. Sandock* (1991), Ind.App., 570 N.E.2d 123, *reh'g denied, trans. denied.*

## DEEDS

Ruthana seeks to have the deeds she executed in favor of Harold set aside on the basis of constructive fraud. She argues that Harold procured her signature on the deeds by exercising undue influence over her. She argues that once she proved at trial that she and Harold were married and that Harold was the dominant party in their relationship, a rebuttable presumption of undue influence arose. The burden then shifted to the defendants (Harold's estate and Greg) to rebut the presumption by clear and convincing evidence to the contrary. She argues that defendants failed to meet this burden.

It is well-settled in Indiana that transactions involving parties to certain legal and domestic relationships give rise to a rebuttable presumption that the transaction was constructively fraudulent "upon a showing that the transaction resulted in an advantage to the dominant person in whom trust and confidence was reposed by the subordinate." *Lucas v. Frazee* (1984), Ind.App., 471 N.E.2d 1163, 1167. *See also Womack v. Womack* (1992), Ind.App., 605 N.E.2d 221, *reh'g denied; Bedree v. Bedree* (1988), Ind.App., 528 N.E.2d 1128, *reh'g denied; McClamroch v. McClamroch* (1985), Ind. App., 476 N.E.2d 514, *reh'g denied, trans. denied.* Among the relationships often cited as giving rise to such a presumption are attorney and client, guardian and ward, principal and agent, pastor and parishioner, husband and wife, parent and child. *Lucas,* 471 N.E.2d at 1167. The law presumes that the first party, i.e., the attorney, guardian, principal, etc., is the dominant and the other is the subordinate. *Womack,* 605 N.E.2d at 224.

In *Womack,* this court examined whether Indiana should still consider the husband/wife relationship as giving rise to a presumption of undue influence and concluded:

We fail to see, however, why we should continue to indulge a belief that the marital relationship in and of itself bestows dominant status upon one party (presum-

ably the husband) and subordinate status upon the other party based solely on gender. The list of relationships cited in *Lucas* originated in an era with vastly different expectations and beliefs concerning the roles of spouses (*Lucas* cited *Keys v. McDowell* (1913), 54 Ind.App. 263, 269, 100 N.E. 385, which, in turn, cited even older Indiana cases), and we note contemporary Indiana family law strives to place husbands and wives on equal footing. *See, e.g.*, IND.CODE 21–1–11.5–11 (presumption that equal division of property in marriage dissolution action is reasonable and just).

We hold the law no longer presumes one party in the marital relationship is dominant and the other subordinate. Instead, the burden of proving undue influence remains on the party seeking to set aside the transaction. Upon a *prima facie* showing that the parties did not deal on terms of equality and that the result was an unfair advantage to the dominant party, the burden shifts to the defending party to demonstrate affirmatively that "no deception was practiced, no undue influence was used, and all was fair, open, voluntary, and well-understood." *Lucas, supra* at 1167.

*Id.* at 225.

■ We need not decide whether we agree with the reasoning employed by the *Womack* court.[1] As Ruthana is appealing a negative judgment, we will reverse only if the evidence is uncontradicted or we are left with a firm conviction that a mistake has been made. *Id.* Assuming that the facts here give rise to a rebuttable presumption of undue influence, the rebuttal evidence that Ruthana was well-versed in business and real estate matters and that she and Harold dealt on an equal basis in their relationship is sufficient to overcome this presumption.

### CERTIFICATE OF DEPOSITION AND PAYMENT OF NOTE

Greg argues that the trial court erred in concluding that a certificate of deposit opened by Harold and Ruthana in the names of Harold, Ruthana and Greg belonged to Ruthana at Harold's death. In January, 1989, before Harold's death, Harold and Ruthana purchased a certificate of deposit for $100,000 in the name of Harold or Ruthana or Greg. The certificate was opened under Greg's social security number and Greg paid income tax on the interest generated by the certificate; however, Greg did not contribute any of the funds to purchase the certificate. When the certificate was purchased, Greg directed the bank to deposit the interest from the certificate into another account owned by Ruthana and Harold. Although the bank had no records of a written instruction to remove Ruthana's or Harold's name from the certificate, it did have a copy of the passbook for the account. The book showed an initialled notation to delete the names of Harold and Ruthana. (The original passbook was filed with the Federal Estate Tax Return for Harold's Estate). Ruthana denies having given the bank instructions to withdraw her name from the certificate. After Harold died, Greg withdrew the funds in the certificate and gave the money to Ruthana. She, in turn, opened two accounts, one in her name only and one in both her and Greg's name.

■ Greg argues that Ruthana no longer has an ownership interest in the certificate. A "party" to an account is one who, by the terms of the account, has a present right, subject to request, to payment from a multiple-party account. Ind. Code 32–4–1.5–1(7). During the lifetime of all the parties to a joint account, the account belongs "to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and

1. We note that the court in *McClamroch v. McClamroch* (1985), Ind.App., 476 N.E.2d 514, reached a different result under similar factual circumstances as those presented in *Womack*. In *McClamroch*, Husband's children alleged that Wife exercised undue influence over Husband. The court held that the relationship between Wife and Husband gave rise to a presumption of undue influence.

*Womack* likewise involved alleged undue influence by the Wife over the Husband. However, as stated above, the court refused to permit a presumption of undue influence based on the husband/wife relationship alone.

convincing evidence of a different intent." I.C. 32–4–1.5–3. At the death of one of the parties, the sums remaining on deposit belong to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intention at the time the account is created. I.C. 32–4–1.5–3. Greg argues that Ruthana's name was no longer on the certificate when Harold died; therefore, she had no right to payment from the certificate account and could not be considered a party thereto. As she was not a party to the certificate at Harold's death, she had no claim of ownership. Therefore, according to Greg, the trial court erred in applying I.C. 32–4–1.5–1 *et seq.* to this dispute.

We agree with Greg that the above-cited statutes do not resolve this issue. Indiana Code 32–4–1.5–3 resolves ownership issues between the surviving parties and the estate of the deceased. Here, however, we have a claim between two people both claiming to be surviving parties to the account.

█ Greg claimed at trial, as he does on appeal, that Harold and Ruthana gave the certificate to him. As such, the burden was on Greg to prove that all of the requirements of an inter vivos gift were met during Harold's lifetime. Specifically, Greg had to prove: 1) intent on the part of Ruthana and Harold to make the gift; 2) that there was delivery of the gift and acceptance by Greg; and 3) that gift was immediate and absolute. *Hopping v. Wood* (1988), Ind.App., 526 N.E.2d 1205, *reh'g denied; trans. denied; In re Estate of Deahl* (1988), Ind.App., 524 N.E.2d 810 *trans. denied.* Greg points to the following evidence as satisfying his burden: the certificate was opened under his social security number; he paid income taxes on the interest generated by the certificate; Harold and Ruthana could not withdraw funds from the certificate after January 12, 1989, when their names had been removed, and only he could withdraw the funds after Harold died.

The evidence on the elements of a completed gift are, however, conflicting. Ruthana denied having instructed the bank to withdraw her name and denies her intent to make a gift to Greg. Ron McGill, the president of the bank, testified that the bank normally requires a signed directive from the owners of the account to remove names. Indeed, I.C. 32–4–1.5–6 requires a written order to vary the form of the account or to stop or vary payment under the terms of the account. McGill testified that no such directives could be found with regard to the certificate at issue here. The question of how and why Ruthana's and Harold's names were removed is necessarily one of credibility with Greg claiming that the certificate was given to him and Ruthana denying the same. Because there is evidence from which the court could conclude no gift was intended, we affirm the trial court.

In a related argument, Greg asserts that he paid off a note held by Ruthana when he turned over the funds in the certificate to her. The trial court found that, in 1987, Harold and Ruthana loaned Greg $125,000, as evidenced by a note or notes executed by Greg and Cathy. Under the terms of the note(s), Greg was to pay 6% interest, with principal and interest payments to be made at the first of December, beginning in December, 1988. Greg paid $17,000 on the principal in December, 1988 and $1,183.33 in interest. Greg argues that the trial court erred in finding that he had not paid off the note. However, because we affirm the court's conclusion as to the ownership of the certificate, we must also affirm the conclusion that Greg and Cathy owe Ruthana $108,000 plus interest of 6% from January 18, 1988 on the note.[2]

### 4650 JOHN DEERE TRACTOR

Greg argues the trial court erred in concluding that the 4650 John Deere tractor purchased by Harold before his death belongs to Ruthana. He argues that Harold gave the tractor to him, and not Ruthana,

2. We note that Greg does not dispute the amount the trial court found still owing on the note.

before he died. Ruthana argues that the tractor was never Harold's to give but that it belongs to her.

The findings by the court on this issue are: In 1986, Harold purchased the 4650 John Deere tractor with funds from a joint account owned by Harold and Ruthana. At Harold's direction, the purchase order was made out in Ruthana's name. The tractor was used on Harold's farm and was stored on Harold's property. In May, 1989, two months before he died, Harold had consulted his tax adviser regarding the farm equipment and made no mention of the gift of the tractor to Greg. Ruthana did not give nor did she intend to give the tractor to Greg.

Greg argues first of all that the tractor was Harold's individual property and Ruthana could only be the owner if Harold had given it to her. Greg argues that the evidence does not support a gift of the tractor to Ruthana; therefore, she has no claim of ownership.

Even if the tractor had been Harold's to give, once again, the evidence is conflicting as to whether a gift to Greg was intended. Greg points to evidence that he modified the tractor at his own expense so that the tractor could be used with his field cultivator, that he installed a two-way radio system on the tractor which was unique to his farm equipment, and that he paid property tax on the tractor in 1989.

However, the evidence supports the trial court's findings that the tractor belonged to Ruthana and that there was no gift of the tractor to Greg. The sales receipt for the tractor was made out in Ruthana's name. Because of the Dead Man's Statute (I.C. 34-1-14-6), both Ruthana and Greg were foreclosed from testifying to Harold's intent. However, Ruthana testified she did not intend to make a gift of the tractor to Greg and that the tractor was kept on Harold's property until Greg removed it after Harold's death. From this, the court could have concluded that Ruthana owned the tractor and that no completed gift of the tractor to Greg occurred.

Because we affirm the trial court's decision on the ownership of the tractor, we likewise affirm the court's determination of rental for Greg's use of the tractor.

For the above-stated reasons, we affirm the conclusion of the trial court that Ruthana's signature on the deeds relinquishing her ownership rights to the property were not obtained under constructive fraud or undue influence. We likewise affirm the trial court's conclusions that Harold and Ruthana did not give the certificate of deposit and the John Deere 4650 tractor to Greg.

RUCKER, J., concurs.

SULLIVAN, J., concurs with opinion.

SULLIVAN, Judge, concurring.

I concur subject to the following caveat. The majority opinion declines to adopt the reasoning contained in *Womack v. Womack* (1992) 1st Dist.Ind.App., 605 N.E.2d 221, as opposed to the contrary reasoning set forth in *McClamroch v. McClamroch* (1985) 4th Dist. Ind.App., 476 N.E.2d 514. I would adopt the reasoning in the *Womack* case. Accordingly, I find it unnecessary to assume facts which would give rise to a rebuttal presumption of undue influence.