**AMERICAN CYANAMID COMPANY,**
Appellant–Defendant,

v.

**Dennis STEPHEN, Bruce Buchanan, Tom Fishero, David Brier and Rennick Farms, Inc., Appellees–Plaintiffs.**

No. 61A05–9205–CV–171.

Court of Appeals of Indiana,
Fifth District.

Nov. 8, 1993.

Roger E. Podesta, Anne E. Cohen, Debevoise & Plimpton, New York City, Ralph A. Cohen, Terri A. Czajka, Ice Miller Donadio & Ryan, Indianapolis, for appellant-defendant.

Irwin B. Levin, David J. Cutshaw, Cohen & Malad, P.C., Deborah J. Caruso, Dale & Eke, Indianapolis, Janet G. Abaray, Waite, Schneider, Bayless & Chesley Co., L.P.A., Cincinnati, for appellees-plaintiffs.

BARTEAU, Judge.

American Cyanamid Co. appeals from the trial court's order certifying some of plaintiffs' allegations against it as appropriate for class action litigation. We restate the issues raised by American Cyanamid as follows:

I. Whether the trial court erred in certifying for class action litigation plaintiffs' claims of fraud and constructive fraud; and

II. Whether the trial court erred in certifying for class action litigation plaintiffs' claim for punitive damages.

We affirm.

### FACTS

American Cyanamid manufactures, markets and sells products, including herbicides, throughout the United States. Among the herbicides manufactured by

American Cyanamid and used for soybeans are Scepter, Squadron and Tri–Scept (collectively "Scepter"). Farmers commonly rotate their crops between soybean and corn annually. One of the concerns in using an herbicide on soybeans, therefore, is whether there will be any harmful "carry over" effects on the following year's corn crop.

Aware of the carry over problems created by Scepter, American Cyanamid established a settlement program in 1988 to compensate farmers for crop damage due to Scepter use. According to American Cyanamid, 86 percent of the 24,653 claims submitted to it were paid.

On December 2, 1989, the named plaintiffs, Dennis Stephen, Bruce Buchanan, Tom Fishero, David Brier, and Rennick Farms, Inc., filed a "Class Action Complaint and Jury Demand" against American Cyanamid. The plaintiffs are Indiana farmers who grow "rotational crops" including soybeans and corn. They claim that the carry over from application of Scepter in either 1987 or 1988 damaged the following years' corn crop. The members of the class are all soybean farmers in Indiana, Illinois, Ohio, Michigan, Iowa and Missouri who purchased Scepter from American Cyanamid and applied it to soybean fields in 1987 and 1988 which were rotated to corn fields in 1988 and 1989. The complaint alleged nine theories of recovery: 1) breach of express warranty; 2) breach of implied warranty of merchantability; 3) breach of an implied warranty of fitness for a particular purpose; 4) negligence; 5) strict liability in tort; 6) fraud; 7) constructive fraud; 8) breach of implied covenants of good faith and fair dealing; and 9) reckless, willful and wanton misconduct. The plaintiffs seek damages for loss of corn crop yield and punitive damages. After a hearing to determine whether a class action could be maintained, the trial court entered the following relevant findings of fact and conclusions of law pursuant to American Cyanamid's motion for such:

1. The Court has jurisdiction over the parties and the subject matter of the lawsuit;

\* \* \* \* \* \*

5. During 1987 through 1990, defendant actively promoted the sale of Scepter through television and magazine advertising and other localized presentations by its sales representatives, and promoted and marketed Scepter as a herbicide which could be applied on soybean fields to control weeds.

\* \* \* \* \* \*

7. From 1987 through 1988, defendant represented that corn, as a rotational crop, could be planted 11 months after the application of Scepter;

\* \* \* \* \* \*

9. Plaintiffs claim that there are thousands of farmers in Indiana, Illinois, Ohio, Michigan, Iowa and Missouri who applied Scepter to soybean fields in 1987 and 1988, whose fields were subject to the carry-over of Scepter in the 1988 and 1989 corn growing seasons;

10. Plaintiffs claim that they and the other farmers they seek to represent suffered yield reductions in their corn crops as a result of Scepter being carried over in the ground, and that such reductions resulted in property damages and were due to the fault of defendant;

\* \* \* \* \* \*

12. The alleged class herein are [sic] all soybean farmers in Indiana, Illinois, Ohio, Michigan, Iowa and Missouri who purchased Scepter from defendant and applied it to soybean fields in 1987 and 1988, which fields were then rotated into corn in 1988 and 1989;

13. Counsel for plaintiffs are experienced in the prosecution of class action litigation and there is no reason to believe that counsel for plaintiffs would not promote a class action vigorously if a class were certified as prayed;

14. Plaintiffs have the burden of proof as to class certification, and plaintiffs have failed in said burden of proof;

15. The principle question of fact herein is whether there are questions of fact or law which are common to the members of the alleged class and which predominate over any questions affecting only individual members of the class;

16. Plaintiffs have failed to prove this question of fact;

17. With the exception of the claim of fraud and constructive fraud, the claims and theories of recovery of the plaintiffs are all extremely plaintiff sensitive factual claims, that is the individual claims and the facts supporting the same predominate over any questions of law and fact common to the alleged members of the class;

18. As stated, Scepter is a chemical herbicide which is applied to the soil, and is mixed with the soil, water and seed to control certain weeds, and often the application would be made by custom applicators rather than the individual farmer;

19. The method of application of Scepter, the method of planting the seed, the type of soil, the weather conditions at the time of planting and the general climate, among other factors, are all variables which would of necessity be dissimilar to each member of the alleged class and these factors would of necessity affect the alleged damage of each member of the class, and would require extensive and individualized proof;

20. Moreover, as stated, plaintiffs claim several and different theories of recovery against defendant, and not all of said theories would be applicable to each member of the alleged class, but would vary among the members of the class;

21. There are also numerous potential defenses to the plaintiffs' claims, all would vary with each individual plaintiff, each dependent upon the assumption of risk, causation, privity, disclaimer, notice, misuse of product, and scope and denial of duty;

22. In short plaintiffs herein have proven that the only common question of law and fact relating to each of them is the purchase of Scepter and its application on their soybean fields, and the numerous and variable other questions of law and fact raised herein are so numerous and individualized as to the members of the class that they clearly predominate in this litigation;

23. The questions of law or fact common to the members of the alleged class do not predominate over any questions affecting the individual members of the class as to all claims except in paragraphs VI [fraud] and VII [constructive fraud] herein;

24. A class action herein is not superior to other available methods for the fair and efficient adjudication of the litigation herein;

25. Moreover, some members of the alleged class herein live in Illinois, Ohio, Michigan, Iowa and Missouri, and plaintiffs have failed in their burden of proof to show that it is desirable to concentrate the litigation of those claims in Indiana;

26. Trial Rule 23(C)(4) provides that "an action may be brought or maintained as a class action with respect to particular issues", and the issues raised by plaintiffs on Counts VI and VII do raise issues that the Court finds can be raised and best litigated as class issues in this case, until further Order of Court which issues are:

 a) The content of all statements issued by defendant which were directed to the class at large;

 b) The truth or falsity of the statements made and issued by defendant to the class at large;

 c) Whether defendant had knowledge of the falsity of any alleged misrepresentations and whether the statements and representations made by defendant were made intentionally or recklessly;

 d) Whether defendant was an expert and had superior judgment and skill in the manufacturing and marketing of herbicides.

27. As to the issues raised and found in Finding 26, the questions of law and fact common to the alleged class would predominate over any questions affecting

individual members of the class, and it would be in the interest of justice to maintain this cause as a class action as to those issues;

28. Count IX is a claim for punitive damages, and in addition to those issues found in Finding 26, there are issues relating to punitive damages which can be raised and best litigated as class issues per TR 23(C)(4), to wit:

a. Whether defendant's conduct in marketing and selling Scepter to the class was fraudulent or reckless;

b. Whether punitive damages should be awarded against defendant;

c. The amount of punitive damages which should be awarded against defendant;

29. As to the issues raised in Finding 28, the questions of law and fact common to the alleged class would predominate over any questions affecting individual members of the class, and it would be in the interest of justice to maintain this cause as a class action as to those issues;

30. The maintenance of a partial class action as to the issues set forth in Findings 26 and 28, would be manageable, and the plaintiffs would fairly and adequately protect the interests of the class as to such issues, and a class action as to those issues would be a fair and efficient method of adjudicating said issues in controversy.

### CONCLUSIONS OF LAW

\* \* \* \* \* \*

4. Pursuant to TR 23(C)(4) the following particular issues raised by plaintiffs in Counts VI, VII and IX are issues which can and should be litigated as a class, until further Order of Court, to-wit:

a. The content of all statements issued by defendant which were directed to the class at large;

b. Whether defendant's statements were false;

c. Whether defendant knew of the falsity of such statements;

d. Whether the false statements by defendant were intentionally or recklessly made;

e. Whether defendant was an expert or had superior judgment or skill with respect to the manufacture and marketing of herbicides;

f. Whether defendant's conduct in the marketing and selling of Scepter to the members of the class was fraudulent or reckless;

g. Whether punitive damages should be awarded against defendant;

h. The amount of punitive damages which should be awarded against defendant.

### JUDGMENT AND DECREE

Based upon the above CONCLUSIONS OF LAW, the Court does now ADJUDGE AND DECREE:

1. The Petition to Certify as to Class Action as to Counts I, II, III, IV, V, and VIII be denied;

2. The Petition to Certify as to Class Action as to Counts VI, VII, and IX be granted until further order of Court as to the issues set forth in CONCLUSION 4 above, all as per TR 23(C)(4);

3. Counsel for plaintiffs prepare and submit to the Court a form of Notice as provided in TR 23(C)(2) forthwith for the Court's examination and approval.

(R. 557–561).

The class was defined as follows:

All persons, corporations or entities farming in Indiana, Ohio, Illinois, Iowa, Michigan or Missouri which purchased the imaquazin based herbicide known as Scepter, Tri–Scept and Squadron manufactured and marketed by American Cyanamid Company which is alleged to have carried over in the 1988 or 1989 crop years and caused damage, and who claim that the damage resulted from fraud or constructive fraud committed by American Cyanamid Company. This class does not include persons, corporations or entities who applied said herbicides and who have already signed re-

leases with American Cyanamid Company.

(R. 638).

### STANDARD OF REVIEW

When reviewing the trial court's rulings on class action issues made pursuant to Indiana Trial Rule 23, this court employs an abuse of discretion standard of review: we do not reweigh the evidence nor judge witness credibility. *Skalbania v. Simmons* (1982), Ind.App., 443 N.E.2d 352, 356. We will affirm the trial court's determination if the evidence most favorable to the judgment as well as all reasonable inferences to be drawn therefrom support the trial court's determination. *Id.*

American Cyanamid argues that our review in this case is governed by Indiana Trial Rule 52(A) because it requested special findings of fact and conclusions of law. When the trial court enters special findings of fact and conclusions of law pursuant to a motion by a party, this court employs a two-tiered standard of review: First, we must determine whether the findings support the judgment. The second inquiry is whether the conclusions of law and judgment are clearly erroneous based on the facts as found by the trial court. *Estate of Goins* (1993), Ind.App., 615 N.E.2d 897, 899, *reh'g denied*. However, where, as here, neither party challenges the court's findings, the parties are bound by the findings of fact as being fully and correctly found by the trial court. *Registration & Management Corp. v. City of Hammond* (1972), 151 Ind.App. 471, 280 N.E.2d 327; *Farmers Mutuals Insurance Co. v. Wolfe* (1968), 142 Ind.App. 206, 233 N.E.2d 690. Thus, our review is limited to the second inquiry, i.e., whether the conclusions of law and judgment are clearly erroneous. The judgment of the trial court will be reversed only if it is clearly erroneous. *Estate of Goins*, 615 N.E.2d at 899.

Stephen argues that T.R. 52(A), along with the above standard of review, is inapplicable to class certification hearings. According to Stephen, T.R. 52(A) applies only to trials without a jury, rulings on motions for preliminary injunction, and review of actions by administrative agencies. A hearing to certify a class action, Stephen argues, is simply not a trial. To support his position, Stephen points to the language of T.R. 52(A) and cites federal caselaw as controlling authority.

Indiana Trial Rule 52(A) provides in relevant part:

> In the case of issues tried upon the facts without a jury or with an advisory jury, the court shall determine the facts and judgment shall be entered thereon pursuant to Rule 58. Upon its own motion, or the written request of any party filed with the court prior to the admission of evidence, the court in all actions tried upon the facts without a jury or with an advisory jury ... shall find the facts specially and state its conclusions thereon.... Findings of fact are unnecessary on decisions of motions under Rules 12 or 56 *or any other motion except as provided in Rule 41(B) (dismissal) and 59(J) (motion to correct errors )*.

(Emphasis supplied).

Focusing on the "or any other motion" language of the rule, Stephen argues that American Cyanamid's request for findings and conclusions does not govern this court's standard of review. However, T.R. 23(C) does not require a motion for the court to hold a hearing on the issue of class certification: "As soon as practicable after the commencement of an action brought as a class action, the court, upon hearing or waiver of hearing shall determine by order whether it is to be so maintained." T.R. 23(C). "A civil action is commenced by filing a complaint with the court...." T.R. 3. Thus, the filing of the complaint in a suit brought as a class action—not the filing of a motion—triggers the hearing required by T.R. 23(C). The question that remains is whether a class action determination is an "issue tried upon the facts."

In *Gulf Oil Corp. v. McManus* (1977), 173 Ind.App. 147, 363 N.E.2d 223, this court held that a hearing set to determine the class action status of the case is a "trial" sufficient to invoke the waiver provision of T.R. 76(7) (change of venue). The

court defined "trial" for the purposes of T.R. 76 as an adjudication upon the factual merits of a claim. *Id.* at 149, 363 N.E.2d 223. According to the court, the adjudication in question need not dispose of all the issues as to all the parties in order to be considered a final adjudication.

Relying on *Gulf Oil*, this court held in *American Cyanamid Co. v. Stephen* (1992), Ind.App., 600 N.E.2d 1387, *trans. denied* (*Stephen I*), that class certification is a final appealable order. The T.R. 23(C) hearing is the only factual determination to be made on the issue of class certification and is therefore a "trial" on this issue.

Based on the reasoning employed in *Gulf Oil* and *Stephen I*, as well as the language of T.R. 52, we conclude that a class action determination falls within T.R. 52(A). A 23(C) hearing is, by nature, an adjudication on the merits of whether, under the facts as found by the court, the prerequisites of T.R. 23 have been met. Therefore, this issue is "tried upon the facts" for the purposes of T.R. 52.

We recognize, as Stephen asserts, that under federal law, the trial court is not required to make findings of fact and conclusions of law when certifying a class action. *See Franks v. Kroger Co.* (6th Cir.1981), 649 F.2d 1216, *on rehearing* (1982), 670 F.2d 71; *Interpace Corp v. City of Philadelphia* (3d Cir.1971), 438 F.2d 401. According to Federal Rule 23, the trial court is not required to hold a hearing before certifying issues for class action litigation. However, under the Indiana rule, the trial court is required to conduct a hearing upon whether the action should be permitted as a class action, unless the hearing is waived by the parties. *Bowen v. Sonnenburg* (1980), Ind.App., 411 N.E.2d 390, 401. Because the Indiana rule, which differs from the Federal Rule in this regard, was adopted after the federal counterpart, we must assume that the framers of our rule intended to depart from the federal rule in this regard. *Id.* Therefore, the federal cases cited by Stephen on this issue are not persuasive.

In summary, we hold that a party may request special findings of fact and conclusions of law pursuant to T.R. 52 before evidence is presented on a T.R. 23(C) hearing. Where the trial court enters special findings of fact and conclusions of law pursuant to the request, this court will employ the two-tiered standard of review explained above. However, as neither party attacks the court's findings of fact, our review will focus on whether those findings support the court's conclusions and order.

## CLASS CERTIFICATION

Indiana Trial Rule 23 sets out the requirements for class actions. The first set of requirements appears in T.R. 23(A), which provides:

One or more members of a class may sue or be sued as representative parties on behalf of all only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Subdivision B of T.R. 23 imposes additional requirements which must also be met. Relevant to this case are those requirements found in T.R. 23(B)(3), which provides:

An action may be maintained as a class action if the prerequisites of subdivision (A) are satisfied, and in addition:

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:

(a) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

(d) the difficulties likely to be encountered in the management of a class action.

Class actions brought under T.R. 23(B)(3) permit several persons who may have small claims to bring a collective action to pursue their collective rights. 7A Wright & Miller *Federal Practice and Procedure* § 1777, (1972). However, common questions of fact or law must predominate over individual questions and class action treatment must be superior to other available methods of adjudication. In class actions certified under T.R. 23(B)(3), the potential class members may "opt out" of the class action after notice. T.R. 23(C)(2)(c).

 In deciding whether to certify a class action under T.R. 23(B)(3), the trial court should consider 1) the interest of members of the class in controlling the prosecution of their cases; 2) the related litigation that has already been initiated; 3) the desirability or undesirability of concentrating the litigation of the claims in this state; and 4) the difficulties in managing the litigation. T.R. 23(B)(3)(a) through (d). This list is not, however, intended to be exhaustive. The court may consider other factors relevant to the particular litigation, such as the underlying purpose of T.R. 23(B)(3). Newberg and Conte, 1 Newberg on Class Actions § 4.24 (1993). The trial court is given broad discretion in determining what weight to be given the factors in making its determination. Further, the trial court may, in its discretion, certify particular issues for class action treatment. T.R. 23(C)(4). Finally, an order certifying only certain issues for class action litigation "may be conditional, and may be altered or amended before the decision on the merits." T.R. 23(C)(1).

 The question of whether an issue may be certified for class action is a question of fact, with the trial court being in a better position than the appellate court to form the class and the issues to be addressed. *See Marks v. C.P. Chemical Co., Inc.* (1987), 31 Ohio St.3d 200, 509 N.E.2d 1249.

**1. Fraud and Constructive Fraud claims:**

 The trial court certified the following issues for class action treatment under the fraud and constructive fraud claims:

a. The content of all statements issued by defendant which were directed to the class at large;

b. Whether defendant's statements were false;

c. Whether defendant knew of the falsity of such statements;

d. Whether the false statements by defendant were intentionally or recklessly made;

e. Whether defendant was an expert or had superior judgment or skill with respect to the manufacture and marketing of herbicides; and

f. Whether defendant's conduct in the marketing and the selling of Scepter to the members of the class was fraudulent or reckless.

American Cyanamid argues that the court abused its discretion in certifying these issues because 1) class action treatment is not the superior method of adjudicating this issue because American Cyanamid has disposed of a vast majority of the potential claims through its settlement program; and 2) resolution of these issues would not have a meaningful impact on the resolution of the litigation as a whole. As stated earlier, the question of class certification is one of fact. Therefore, the cases from federal district courts cited by American Cyanamid in support of its argument are not particularly helpful to our analysis. "[O]ur function is not to look at all the factors opposing and supporting class certification, but rather to focus upon whether there are factors supporting the trial court's action." *Skalbania*, 443 N.E.2d at 359–60.

■ In *Skalbania,* this court affirmed the trial court's certification of common law fraud allegations for class action treatment. The court stated:

As to the common law fraud counts, we cannot say as a matter of law that a complaint alleging that a group of persons has been defrauded by the same acts of defendants cannot be maintained as a class action. Indiana has allowed such class actions in the past. That the suitability of a fraud case for class treatment is an essentially factual inquiry entrusted to the discretion of the trial court is indicated by the commentators. In discussing T.R. 23(B)(3) actions, Professor Harvey states:

The court is required to find, as a condition of holding that a class action may be maintained under this subdivision, that the questions common to the class predominate over the questions affecting individual members. It is only where this predominance exists that economies can be achieved by means of the class-action device. In this view, a fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class. On the other hand, although having some common core, a fraud case may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed.

*Id.* at 359 (quoting 2 Wm. Harvey, Indiana Practice at 349 (1970)). Whether the alleged fraud falls into the category of fraud perpetrated on several individuals by the use of similar misrepresentations or whether there were material variations in the misrepresentations is a question of fact. *Id.,* 443 N.E.2d at 359. Here, the court's findings nos. 5, 26 and 27, which are not challenged by American Cyanamid, support a conclusion that the alleged fraud was perpetrated by similar misrepresentations

and that the above issues were properly certified for class action treatment:

5. During 1987 through 1990, defendant actively promoted the sale of Scepter through television and magazine advertising and other localized presentations by its sales representative, and promoted and marketed Scepter as a herbicide which could be applied on soybean fields to control weeds;

\* \* \* \* \* \*

26. Trial Rule 23(C)(4) provides that "an action may be brought or maintained as a class action with respect to particular issues", and the issues raised by plaintiffs on Counts VI and VII do raise issues that the Court finds can be raised and best litigated as class issues in this case, until further Order of Court, which issues are:

a. The content of all statements issued by defendant which were directed to the class at large;

b. The truth or falsity of the statements made and issued by defendant to the class at large;

c. Whether defendant had knowledge of the falsity of any alleged misrepresentations and whether the statements and representations made by defendant were made intentionally or recklessly;

27. As to the issues raised and found in Finding 26, the questions of law and fact common to the alleged class would predominate over any questions affecting individual members of the class, and it would be in the interest of justice to maintain this cause as a class action as to those issues.

(R. 559–600).

Thus, although non-common issues as to American Cyanamid's liability to the individual plaintiffs may remain, the trial court properly exercised the discretion granted it under T.R. 23(C)(4) to limit the certified issues to American Cyanamid's conduct.

■ American Cyanamid further argues that certification of this issue for a multistate class is improper because the

trial court made no finding that Indiana is the appropriate forum for resolution of these claims.[1] American Cyanamid argues that the trial court made a negative finding on this issue; therefore, the issues should not have been certified. Finding of fact No. 25 provides:

> Moreover, some members of the alleged class herein live in Illinois, Ohio, Michigan, Iowa and Missouri, and plaintiffs have failed in their burden of proof to show that it is desirable to concentrate the litigation of those claims in Indiana.

(R. 559). Again, the trial court is given broad discretion under T.R. 23(B)(3) to determine what weight to be given the factors listed in T.R. 23(B)(3)(a) through (d). Whether Indiana is the appropriate forum to decide this issue is but one of the factors the trial court may consider. Because T.R. 23 does not dictate what weight is to be given to the various factors listed in 23(C), an issue may be certified absent a specific finding Indiana is the proper forum.

■ American Cyanamid also expresses concern over the manageability problems created by the trial court's order. Again, the trial court is in the best position to make this determination and we may not substitute our judgment for that of the trial court in this regard.

## 2. *Punitive damages:*

■ As to the issue of punitive damages, the trial court entered the following findings of fact:

> 28. Count IX is a claim for punitive damages, and in addition to those issues found in Finding 26, there are issues relating to punitive damages which can be raised and best litigated as class issues per TR 23(C)(4), to wit:
>
> a) Whether defendant's conduct in marketing and selling Scepter to the class was fraudulent or reckless;
>
> b) Whether punitive damages should be awarded against defendant;
>
> c) The amount of punitive damages which should be awarded against defendant;
>
> 29. As to the issues raised in Finding 28, the questions of law and fact common to the alleged class would predominate over any questions affecting individual members of the class, and it would be in the interest of justice to maintain this cause as a class action as to those issues;
>
> 30. The maintenance of a partial class action as to the issues set forth in Findings 26 and 28, would be manageable, and the plaintiffs would fairly and adequately protect the interests of the class as to such issues, and a class action as to those issues would be a fair and efficient method of adjudicating said issues in controversy.

American Cyanamid argues that the trial court erred in certifying the issues for class action treatment because 1) punitive damages are derivative of compensatory damages and cannot be awarded unless and until a determination of compensatory damages; 2) punitive damages may not be determined solely by examining American Cyanamid's conduct; and 3) the nature of the multistate class would make the litigation unmanageable.

■ Again, American Cyanamid's argument is little more than a request to this court to reweigh the evidence and to substitute our judgment for that of the trial court. The trial court specifically limited the issues to focus on American Cyanamid's conduct and not whether individual plaintiffs would be entitled to punitive damages. A primary consideration in punitive damage awards is the tortfeasor's conduct. *Smith v. Wade* (1983), 461 U.S. 30, 54, 103 S.Ct. 1625, 1639, 75 L.Ed.2d 632, 650. *See also* Restatement (Second) of Torts § 908, comment e (1979). Because the focus in determining whether punitive damages should be awarded is on the tortfeasor's

---

1. American Cyanamid does not argue that the Indiana court does not have jurisdiction over the nonresident class members. Trial Rule 23 is silent as to whether the court may certify a multistate class action. The states that have addressed the issue are split as to whether a state court may exercise jurisdiction over non-residents of a plaintiff class. *See* Newberg and Conte, Newberg on Class Actions, §§ 13.26 and 13.27.

conduct, "punitive damage issues easily qualify as common issues for class action treatment in a Rule 23(b) voluntary class." 4 Newberg on Class Actions § 17.34 (1992). Here, the trial court properly limited the certified issues to the defendant's behavior. Therefore, we find no abuse of discretion. As to the manageability concerns raised by American Cyanamid, we again defer to the discretion of the trial court.

AFFIRMED.

RUCKER and STATON, JJ., concur.